**Carolyn McCORD, Appellant,**

v.

**Lennell GREEN, Appellee.**

**No. 7307.**

District of Columbia Court of Appeals.

Argued Dec. 11, 1973.

Decided Aug. 5, 1976.

Nicholas A. Addams, Washington, D.C., for appellant.

Austin F. Canfield, Jr., Washington, D. C., for appellee.

Before REILLY, Chief Judge, YEAGLEY, Associate Judge, and HOOD, Chief Judge, Retired.

REILLY, Chief Judge:

This appeal presents for the first time in this jurisdiction the question of whether the non-use of a seat belt by an occupant of an automobile, suing for personal injury caused by negligence, may be considered by a court or jury as evidence of contributory negligence.

In the case before us, where the plaintiff (appellant, here) had been hurt while riding as a passenger in a car which was struck at an intersection by another vehicle and brought an action for damages charging both drivers with negligence, the trial court instructed the jury that it could consider the failure of the plaintiff to use the seat belt either as contributory negligence, which barred recovery, or in mitigation of damages. The jury returned a verdict for both defendants. On appeal, the foregoing instruction is assigned as error.[1]

The evidence presented to the jury may be briefly summarized as follows:

At the time of the accident, appellant was employed as an airline stewardess and lived in a Virginia suburb. One evening in May, Thomas P. Tinnin, a young Senate employee called for her in his Volkswagen to escort her to a birthday party in Washington given for him by some of his fellow employees. Shortly before midnight, they went to another party on upper Connecticut Avenue. On the way to her home from that gathering, Tinnin drove south on Connecticut Avenue into the DuPont Circle underpass. Upon emerging, and proceeding across the N Street intersection, Tinnin's car was hit with considerable force on the left front side by a Pontiac heading west in the intersection. There were two men in the Pontiac, defendant Green, the operator, and a fellow worker, Larry Baker.

According to their testimony, they had also been at a party and after leaving, had driven north on Connecticut Avenue and had turned left on N Street. Both testified that the turn was made on a green light—a left turn signal arrow. Unless the lights were not working properly (and there was no evidence to this effect), this testimony was in direct conflict with that of plaintiff and Tinnin, both of whom said on the stand that the light in front of them was green as the Volkswagen left the underpass and entered the intersection.

Tinnin also testified that when he saw defendant Green's car on his left, it was only a car length away; that he jammed on his brakes but was unable to stop his Volkswagen before the other car struck it on the side. The impact was so severe that he was shoved violently to the right, snapping both his ignition key and the gear shift. His companion (the plaintiff) was thrown against the dashboard and windshield, suffering facial cuts and knee, rib, and elbow injuries.

Thus, the question of which driver was at fault rested largely with the jury's appraisal of the credibility of the parties and their respective supporting witnesses. Unlike most avenue intersections in this city,

---

1. The appeal before us is only from the judgment in favor of the defendant, Lennell Green. The court in a post-trial order awarded costs to the other defendant, Thomas P. Tinnin, driver of the car in which plaintiff was a passenger, implying that the record did not establish negligence on his part. Apparently, in limiting her appeal, plaintiff came to the same conclusion.

the N Street and Connecticut Avenue crossing is a notoriously blind one as the combination of the underpass and decorative shrubbery on the dividing island limits a driver's vision of lateral traffic, causing automobiles approaching the intersection from either north or west to be unusually dependent on the lighting controls. In other words, the accident would not have occurred unless one of the drivers ignored a red or amber signal and by his carelessness in this respect caused the collision.

By returning a verdict against the plaintiff the jury, however, never decided the question of which of the two drivers was at fault, although it is plain that one of them was. Consequently, we must infer that the jurors must have determined that the plaintiff's conduct amounted to contributory negligence. Two of the trial court's instructions permitted the jury to reach such a conclusion, *viz,* (1) the charge relating to plaintiff's nonuse of the seat belt, and (2) one concerning possible assumption of risk on plaintiff's part, *i.e.,* if the host driver, Tinnin, was deemed negligent and that such negligence was due to intoxication which must have been apparent to plaintiff when she permitted him to drive her home. So far as the case before us is concerned, the latter instruction may be disregarded, for it operated only for the benefit of defendant Tinnin, and the verdict in his favor has not been appealed.[2]

Thus the sole issue before us on appeal is whether the trial court committed error when it acceded to defendant's request that the jurors be instructed that they could find that plaintiff's failure to fasten on a visible seat belt constituted negligence on her part, if they believed that use of the belt would have prevented or minimized her injuries.[3] While we are aware that in some jurisdictions (like our own where the use of seat belts is not required either by statute or by traffic regulations), similar instructions have been upheld by the highest courts of the states, *Sams v. Sams,* 247 S.C. 467, 148 S.E.2d 154 (1966); *Bentzler v. Braun,* 34 Wis.2d 362, 149 N.W.2d 626 (1967); *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E. 2d 164 (1974), the great weight of judicial authority is to the contrary.[4]

It is our opinion, after examining the published decisions of the appellate courts in other states, that the giving of the instruction in the case before us was error. We have reached this conclusion not because the courts which have considered the question and rejected the seat belt defense are in the majority, but because it seems to us that the holdings to the opposite effect do violence to such well-settled principles of tort liability as proximate causation, foreseeability, and the standard of care exercised by a reasonably prudent man.

Apparently the courts which have treated non-use of a seat belt either as contributory negligence or a failure to mitigate damages have been unduly impressed with the supposed efficacy of seat belts as safety devices. In the *Spier* case, *supra,* which has given impetus to the seat belt defense in tort actions, the New York Court of Appeals correctly disapproved on principles of causation, decisions like *Brentzler v. Braun, supra,* and *Sams v. Sams, supra,* holding that failure to fasten a seat belt

---

2. Plaintiff's testimony established that Tinnin had consumed three or four drinks over a period of several hours, but that his driving ability did not seem to have been impaired. It is by no means clear that this charge should have been given under these circumstances. In any event, if the accident was due to defendant Green's failure to heed the traffic lights, neither Tinnin's drinking nor the plaintiff's knowledge of it was a contributing factor to the crash.

3. Both defendants made this request. We note in passing that defendant Tinnin had not buckled on his own seat belt.

4. *See* cases cited in note 13, *The Safety Belt Defense-Current Status,* 16 FTD 45 (April 1975), and Annotation, *Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence,* 15 A.L.R.3d Supp. 1428 (1975).

may be determined by a jury to constitute contributory negligence as a matter of common law. The court said:

> In our view, the doctrine of contributory negligence is applicable only if the plaintiff's failure to exercise due care causes, in whole or in part, *the accident*, rather than when it merely exacerbates or enhances the severity of his injuries . . . . [*Spier, supra* at 448, 363 N.Y.S.2d at 921, 323 N.E.2d at 168; citations omitted, emphasis in original.]

This observation, with which we agree, is dispositive of one aspect of the case before us, for clearly nothing that the plaintiff—passenger in this case—did or failed to do, caused the accident. The New York court, however, relying on the doctrine of avoidable consequences, held, as did the trial court here, that it was within the province of the jury to consider whether use of the seat belt would have prevented at least a portion of the plaintiff's injuries. In so holding, the court remarked:

> At this juncture, there can be no doubt whatsoever as to the efficiency of the automobile seat belt in preventing injuries. Simply stated, "[t]he seat belt properly installed *and properly worn*, still offers the single best protection available to the automotive occupant exposed to an impact." . . . Furthermore, though it has been repeatedly suggested that the seat belt itself causes injury, to date the device has never been shown to worsen an injury, but, on the contrary, has prevented more serious ones. . . . [*Spier v. Barker*, 35 N.Y.2d at 448, 363 N.Y.S.2d at 922, 323 N.

E.2d at 168.[5] (Footnotes and citations omitted; emphasis in original.)]

In our view, this observation lacks factual foundation, particularly the statement that the seat belt "has never been shown to worsen an injury, but, on the contrary, has prevented more serious ones." A moment's reflection shows that this assertion cannot possibly be true. Numerous fatalities occur in automobile collisions when one car, forced off a bridge or waterside highway, plunges into a river or is overturned and set ablaze. Obviously the victims would have had a much greater chance of surviving had they not been trapped in the submerged or burning car by buckled seat belts.[6] There is no doubt, of course, that seat belts do provide protection to belted occupants of cars in a head-on collision or cars braked to a screeching halt, as the belt-wearer may be prevented from lurching forward against the steering wheel, dashboard, or windshield.

These are not the only kinds of accidents which can happen to automobiles. Judicial notice may be taken of the fact that a heavy majority of the appeals which reach this court are concerned with litigation over intersectional collisions. In such cases the protective value of a seat belt is dubious, for many an occupant pinned down by his belt beside a door bashed in by a broadside impact, could suffer injuries which would not have occurred had he been thrown free. In the very case we are considering, the host driver might have been badly hurt had he put on his seat belt that night, for his testimony describes the side of his car as being crushed by the force of defendant Green's vehicle. Con-

---

5. The court cited Snyder, *Seat Belt as a Cause of Injury*, 53 Marq.L.Rev. 211 (1970).

6. In supporting the Wyman amendment to the Motor Vehicle Safety Act of 1974 which ended the authority of the Department of Transportation to require safety belt interlocks or buzzer systems operating when such belts are unfastened, Rep. James M. Collins of Texas, told the House of Representatives of several cases where the use of belts was a contributory factor to death or injury. 120 Cong. Rec.H. 8133 (daily ed. Aug. 12, 1974). The House adopted this amendment against the recommendations of the Department and the Committee on Interstate Commerce by a vote of 339 to 49 (*id.* at H 8137), and it ultimately became law. Pub.L. No. 93–492, § 1–109, 88 Stat. 1470, 15 U.S.C. § 1410b (1974).

sequently, even though intersectional collisions may occur with enough frequency to be called a foreseeable incident of city driving, whether or not a seat belt will do more harm than good to the victims of such an accident is unpredictable.

Because of these variables, at least three of the highest state appellate courts have declined to recognize that a failure to use seat belts is evidence of negligence. *Cierpisz v. Singleton,* 247 Md. 215, 230, 230 A. 2d 629, 635 (1967); *D. W. Boutwell Butane Co. v. Smith,* 244 So.2d 11 (Miss. 1971); *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968). In the *Butane* case, the Mississippi court in commenting on a statute requiring that seat belts be attached to the front seat, said:

> It will be noticed that the statute in question provides for the cars released after a certain date to be equipped with safety belts but it does not require the occupants to use them. There are many factors to be considered as to their use. So many questions as to the efficacy of seat belts remain unanswered that we are unwilling now to lay down a rule that the failure to use them is negligence. [244 So.2d at 12.]

In the *Miller* case, Justice Sharp of the North Carolina Supreme Court took account of the fact that other legal commentators [7] do not share the enthusiasm for automobile seat belts expressed by the writer of the law review article relied upon by the New York court in the *Spier* case, and observed at 69:

> There is also a belief that seat belts increase the frequency or severity of abdomen-pelvis and lumbar spine injuries. Roethe at 292. This belief, according to Kleist, has some foundation in fact:
>
> " * * * In the comprehensive study conducted by Motor Vehicle Research,

Inc., hundreds of controlled crashes at various speeds with dummies simulating the human body placed in various positions with and without seat belts were observed by specially located cameras, and it was concluded that the standard waist type seat belts can cause more, rather than less, injuries in many crash conditions. Other researchers have reached the conclusion that the use of seat belts is limited in value. Therefore, whether or not the use of waist type seat belts is desirable remains at best speculative. Until more definitive answers are available the defense that the plaintiff is guilty of contributory negligence in not wearing a seat belt is subject to the objection that such a defense is pure conjecture.

"* * * Assuming merely for the sake of argument that wearing seat belts would reduce injuries in 75 per cent of all collisions, the motorist, when he enters his car, cannot be assured that the collision he might have will not be one of the 25 per cent in which the seat belt might increase the degree of injury. In any given collision, no doctor can say exactly what injuries would have been suffered had the victim been wearing a seat belt as compared to those he suffered without it. There are too many unknown variables such as exact number, degree, direction, duration, and kinds of forces that might have been acting in any given accident to answer the question with any accuracy." Kleist at 614. See also 16 Am.Jur., Proof of Facts, Seat Belt Accidents § 43 (1965); *National Dairy Products Corporation v. Durham,* 115 Ga.App. 420, 154 S.E.2d 752 (1967).

■ A fundamental concept of negligence is that it consists of conduct (an act or failure to perform an act) from which the reasonably prudent man in the exercise of ordinary care would refrain. Conse-

---

7. The *Miller* opinion quotes a number of excerpts from Roethe: *Seat Belt Negligence in Automobile Accidents,* Wis.L.Rev. 288 (1967), and Kleist, *The Seat Belt Defense—An Exercise in Sophistry,* 18 Hastings L.J. 613 (1967).

quently, to hold that failure to use a seat belt amounts to negligence assumes that the usual practice of car drivers and passengers is to use these devices. Statistics on the subject refute any such assumption. According to a report of the National Safety Council in 1967, published long after 33 States and the District had required manufacturers and dealers to install safety belts, the net usage of such belts was estimated to be only 20 to 25 percent.[8] Current data published since this case was argued indicate no substantial change in the situation. In opposing legislation to abolish regulations for buzzers and interlock systems on new automobiles, the Secretary of Transportation reported to Congress:[9]

> Unfortunately, the use of occupant restraints has traditionally been low in this country. Even now, the average use rate for cars of all model years is about 5 percent for lap and shoulder belts and 25 percent for lap belts alone.

To characterize plaintiff's behavior in this case as lacking in ordinary prudence would be paradoxical, as it did not differ from that of 75% of the motorists in this country with respect to the use of seat belts.[10]

■ Similar respect for other accepted principles of law compel us also to deem erroneous the instruction permitting the jury in assessing damages to consider whether or not plaintiff's injuries, or at least a portion thereof, could have been prevented had she fastened her seat belt. It is true that such a holding was made in *Spier v. Barker, supra,* the court invoking

the doctrine of avoidable consequences (also called the duty to minimize damages), which means that the plaintiff is under an obligation to avoid or lessen the harm incurred by the defendant's wrongdoing. With all deference to the New York Court of Appeals, however, we do not deem this rule applicable to cases like *Spier* or the instant one, for it assumes that the trier of fact may attach significance to purely fortuitous events in which the chain of causation may be discerned only by hindsight. The doctrine of avoidable consequences, like the last clear chance doctrine, comes into play only after the defendant has committed the wrongful act but at a time when plaintiff still has an opportunity to avoid the consequences in whole or in part. Surely the situation before us does not fall into that category, for in the split second prior to the crash in which plaintiff and her host driver were aware that a collision was imminent, there was not time to buckle on the belt. If negligence cannot be attributed to the plaintiff for her failure to use the belt when her return journey in the car began, it would be absurd to hold her culpable for not remedying the situation when no last clear chance of doing so was provided her.

The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, they occur—if at all—at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of

**8.** *National Safety Council, Accident Facts 53* (1967), cited in *Miller v. Miller, supra,* 273 N.C. at 232, 160 S.E.2d at 69.

**9.** Letter to Hon. John E. Moss, dated Aug. 12, 1974. 120 Cong.Rec.H 8134 (daily ed. Aug. 12, 1974). As Congress enacted the legislation notwithstanding (*see* n. 6 *supra*), it is safe to assume that popular practice is about the same.

**10.** We do not think that because plaintiff was an airline stewardess, she was under

any special duty to take such precautions as a seat belt grants. Contrary to suggestions of counsel, any analogy to the protection conferred by seat belts upon airline passengers is farfetched. Belts were not attached to seats in commercial airlines to prevent passengers from being thrown forward in collisions which might occur while airborne, but rather to protect their heads from being buffeted against the aircraft ceiling in take-offs, landings, and sudden downdrafts.

the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable. [22 Am.Jur.2d *Damages* § 31 (1965); footnotes omitted.]

A similar analysis caused the North Carolina Supreme Court in *Miller v. Miller, supra,* to conclude that the seat belt doctrine does not fit the doctrine of avoidable consequences. We regard this reasoning as flawless.

*Reversed and remanded for a new trial.*