Sheree F. FOSTER, Appellant,

v.

**GEORGE WASHINGTON
UNIVERSITY MEDICAL
CENTER, Appellee.**

No. 97–CV–514.

District of Columbia Court of Appeals.

Argued June 17, 1999.
Decided Oct. 7, 1999.

Jack A. Gold, with whom Lawrence S. Lapidus and Anthony G. Newman were on the brief, Bethesda, MD, for appellant.

James P. Gleason, Jr., Rockville, MD, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge.

Plaintiff-appellant Foster (hereafter "Foster") sued defendant-appellee George Washington University Medical Center ("the Hospital") for injuries she allegedly suffered as a result of negligence related to the birth of her child in February 1993. The complaint asserted that the Hospital had breached the standard of care with respect both to pre-delivery evaluations and, in several ways, to the delivery process itself, as well as in failing to obtain Foster's informed consent to a labor-induced birth. After a trial, the jury returned a verdict in favor of the Hospital. The trial judge denied Foster's motion for judgment notwithstanding the verdict and/or new trial. On appeal, Foster argues primarily that the judge erred in responding (or inadequately responding) to notes which the jury sent out during deliberations revealing its confusion about the relationship between a defendant's negligence and the plaintiff's duty to mitigate damages, which it seemingly took to be a form of contributory negligence.

We agree with Foster that there were serious deficiencies in the manner by which the judge responded to a jury that had signaled its confusion on an important issue dividing the parties, namely, whether or to what extent Foster's failure to mitigate her damages should limit her recovery for any damages caused by the Hospital's negligence. At a key juncture the judge accepted the deputy courtroom clerk's interpretation of a jury note as "somewhat suggestive" of (but not "reveal[ing]") a numerical division, and so neither read the note nor consulted with counsel and the parties about its contents or the proper response, thus depriving the jury of requested guidance. Since the judge's response to the note at this sensitive stage of the proceedings creates an unacceptable risk that the verdict stemmed from a mistaken understanding of the law, we must reverse and remand for a new trial.

## I. *The Facts*

At trial, each side put on expert testimony regarding whether or not physicians employed by the Hospital had been negligent in the prenatal care administrated to Foster, the decision to induce labor, and the process of delivering her child, as well as in the failure to obtain her informed consent. Along with its other defenses, the Hospital contended through witnesses that Foster, although an excellent candidate for "biofeedback" that would have ameliorated any injuries she suffered, had spurned recommendations to seek such treatment. So, at the close of the evidence, the defense requested an instruction on mitigation of damages. Over Foster's objection that "there is no evidence to support it," the judge instructed the jury:

[t]he plaintiff is required to use ordinary care to avoid loss or lessen the damages resulting from a physician's negligence by following the expert recommendations of her physicians. In other words, a person who has suffered injury from reason of a defendant's negligence is bound to use reasonable efforts to make the damages as small as practical, and to act in good faith to adopt reasonable methods and follow reasonable programs of medical care and treatment.

After almost two days of deliberations, the jury sent a note to the judge late in the day, stating: "We have been instructed to determine whether the plaintiff used reasonable efforts to make damages small and act in good faith, etc.... If we determine that the plaintiff did not do these things, is recovery precluded by her actions?" The next morning, Friday, the judge summoned counsel to the courtroom, and Foster's attorney suggested that this was "a wonderful opportunity for the Court to cure the error in giving the [mitigation] instruction[ ]" by telling the jury to disregard it. Alternatively, he suggested that the judge "could answer simply no, or ... answer ... that the failure to minimize or mitigate damages does not preclude recovery, but only precludes those damages as might have been avoided by reasonable efforts of the plaintiff." After counsel again proposed "a simple 'no,' " to which the Hospital's attorney objected, the judge wrote out an instruction which Foster's counsel unsuccessfully criticized as "too amorphous to provide special guidance in light of their note." The instruction, which the judge directed the courtroom clerk to take back to the jury, stated simply: "You are instructed that you are to determine the [e]ffect, if any, your findings have on the plaintiff's claim for damages."

Shortly before noon that day, the jury sent another note to the judge stating, "Your Honor, we have, it seems, reached an impasse and are unable to reach a unanimous decision in this matter." Foster asked for a mistrial on the ground that the jury had been deliberating for two and a half days, was "hopelessly at an impasse," and was still "confus[ed] about the mitigation of damages issue." But the judge viewed a mistrial to be premature given the length of the trial and the complexity of the (largely expert) testimony. Opining from the note on mitigation that

the jury might have been seeking "an easy way out" so far, the judge resolved to answer the second note by instructing simply: "Please keep deliberating."

At 4:30 p.m. that day, the parties were summoned to the courtroom and told that the jury had reached a verdict. Before revealing the verdict, however, the judge declared, "Let me put the two issues on the record this afternoon that we kind of dealt with." The first was that the deputy courtroom clerk, Ms. Frances, had "receive[d] a note a while ago[;] it is now 20 minutes to five." (Counsel for the Hospital interrupted to say that the note had been received "[a]bout 4:00 p.m. by my record, Your Honor.") The judge continued:

She brought the note to chambers, but indicated to me she did not think it was an appropriate note for the Court to review. She said it did not reveal a split, but in her view it was somewhat suggestive. I told her to seal it in the record, sign it, put it in the jacket *and inform you all that I had indicated to her to do so* and have them rewrite the note. Apparently they did not wish to re-write the note. [Emphasis added.]

In fact the note read as follows: "If we find that both △ [defendant] and π [plaintiff] have been negligent[,] must we find for the △? (We're not referring to damages.)." [1]

The second issue related to the fact that, simultaneously with the just-mentioned note, the jury asked permission to continue deliberating until 5:15 p.m., forty-five minutes past the normal closing time. The judge explained that, after consulting with the acting Chief Judge, she had directed the courtroom clerk to tell the jury that because of budget constraints they should deliberate past 4:30 only if a verdict could likely be reached by 5:15, and otherwise should stop and resume on Monday.[2]

1. The use of the symbols may have reflected the fact that the jury foreperson was a lawyer.

2. In reality, this description of what the judge told the clerk to tell the jury is a good deal

less problematical than language the clerk in fact may have used. See *infra*, pages 797–798.

## II. *Discussion*

Foster's dissatisfaction with the judge's treatment of mitigation begins with the original instruction on the issue. She contends that the instruction given, which was derived from a model federal one quoted in *George Washington University v. Waas*, 648 A.2d 178, 185 n. 11 (D.C.1994), failed to assign the burden of proof on failure to mitigate to the Hospital "and, more importantly, . . . failed to indicate that the jury could only consider whether Ms. Foster's recovery should be *reduced* if it determined she failed to act reasonably in minimizing her damages." Br. for Appellant at 25 (emphasis in original). Both points—the burden of proof and the required disregard of only "those damages which could or should have been lessened or avoided"—are made explicitly in the current Standardized Civil Jury Instructions for the District of Columbia, No. 12–7 (1998).

■ Foster's difficulty, besides the fact that the standard instruction she relies on did not exist in that form at the time of trial, is that she did not object to the initial instruction given on the grounds she now asserts. Rather, her sole objection was that "there is no evidence to support" a mitigation instruction, a complaint not well-taken.[3] Although our decisions before trial in this case had made clear that "the burden of proving that . . . damages could have been . . . mitigated rests with the party that committed the breach," *Obelisk Corp. v. Riggs Nat'l Bank*, 668 A.2d 847,

856 (D.C.1995) (internal quotation marks omitted); *see also Edward M. Crough, Inc. v. Department of Gen. Servs. of the District of Columbia*, 572 A.2d 457, 467 (D.C.1990), Foster does not persuade us, as she must, that the judge allowed a "miscarriage of justice" to occur by failing to instruct on points not brought to her attention, particularly when the instruction given "was on its face a correct statement of the law." *Banks v. District of Columbia*, 551 A.2d 1304, 1309 (D.C.1988); *cf. also id.* ("While the trial court might have clarified for the jury the exact contours of contributory negligence . . . no miscarriage of justice occurred in not doing so" (footnotes omitted).).

■ Foster does somewhat better, although not decisively so, in faulting the judge's response to the first jury note which asked, "If we determine that the plaintiff did not [make reasonable efforts to reduce her damages], is recovery *precluded* by her actions" (emphasis added). Foster objected and asked the judge to answer simply "no" or, alternatively, that failure to mitigate would bar only those damages Foster might have avoided by reasonable efforts. Instead the judge told the jury, tersely, that "you are to determine the [e]ffect, if any, your findings have on the plaintiff's claim for damages." In light of subsequent events, we know that the jury was struggling to separate liability from damages, and Foster is certainly right that the judge could have spelled out

---

**3.** In her motion for judgment notwithstanding the verdict and/or a new trial, as well as on appeal, Foster has also argued that the mitigation issue was waived by the Hospital because it was an affirmative defense not pled under Super. Ct. Civ. R. 8(c). Given our disposition of the case, we need not reach this issue. Nevertheless, our case law, although tending to suggest that failure to mitigate is an affirmative defense that must be pled in accordance with the rule, *see Waas*, 648 A.2d at 179 n. 3 ("the duty to mitigate is akin to the doctrine of avoidable consequences, an affirmative defense which may be waived if not pled pursuant to Super. Ct. Civ. R. 8(c) or not litigated in the trial court"), holds that if such

a defense is actually litigated at trial, the defense will not be considered waived. *See id.; Flippo Constr. Co. v. Mike Parks Diving Corp.*, 531 A.2d 263, 269 (D.C.1987) ("as long as an issue is expressly or impliedly tried by consent of the parties, regardless of whether it is raised in the pleadings, the trial court is required to resolve it" (internal quotation marks and citation omitted)); *see also Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights*, 687 A.2d 215, 219 (D.C.1997) (employment discrimination case in which the employer's "right" to "raise failure to mitigate" was determined not to have been "waived" because the complainant had been questioned on the issue at the trial-type hearing).

the difference between the two more explicitly. On the other hand, viewing the matter as of the time an answer was necessary, the judge could not be sure the responses Foster herself proposed (especially a simple "no") would not mislead a jury leaning to the view that her damages could have been avoided *entirely* by the treatment she had spurned—in which case recovery would indeed be "precluded." At this stage, in other words, the judge could (a) fairly read the note as merely asking whether failure to mitigate could affect liability, and (b) answer as she did, in a way that was neither inaccurate nor unintelligible—telling the jury that its "findings" on mitigation related to "the plaintiff's claim for damages." In general, a trial judge "ha[s] discretion to respond to [a] jury's note in the degree of detail the court believe[s is] warranted." *Molovinsky v. Fair Employment Council*, 683 A.2d 142, 149 (D.C.1996).[4] Had matters stopped here, we could find no abuse of discretion on the judge's part.

 At 4:00 that afternoon, however, after the jury had been instructed at noon to keep deliberating despite its professed state of impasse,[5] the jury sent another communication to the judge. It revealed that in fact the jury was seriously confused

about the relationship between liability and mitigation of damages, for it (a) asked whether if the jury found that both the Hospital and Foster had been negligent it must find for the defendant, and (b) stated that "[w]e're *not* referring to damages" (emphasis added). In fact, Foster's "negligen[ce]" had never been an issue in the case (contributory negligence had not been raised) *aside* from the issue of whether she had used ordinary care to lessen her damages—which the jury purported not to mean. Our decisions have recognized that contributory negligence and mitigation are conceptually horses of a different color. *See Waas*, 648 A.2d at 180; *McCord v. Green*, 362 A.2d 720, 725–26 (D.C.1976).[6] So the note which the jury sent at 4:00 was an obvious call for guidance bringing into play the principle that "the trial court is under an obligation to respond to a jury's confusion, particularly where the jury makes explicit its difficulties." *Murchison v. United States*, 486 A.2d 77, 83 (D.C. 1984) (internal quotation marks and citations omitted).

Nevertheless, the trial court neither read the note nor revealed its contents to the parties. Foster states in her brief that the contents of the note remained unknown to the parties until well after the verdict[7] when her attorney read it in the

4. In that case, we pointed out that Molovinsky had not "argue[d] … that the trial court's statement [to the jury] was *inaccurate*," and that "[e]ven if a detailed explanation [of the degree of malice necessary to support punitive damages] might have been more favorable to Mr. Molovinsky," there was "no abuse of discretion in the decision to give a 'short answer' to a specific question." 683 A.2d at 149 (emphasis in original).

5. Foster's separate claim that the judge abused her discretion in not declaring a mistrial following the impasse note has no merit for the reasons the judge placed on the record regarding the length of the trial and the complexity of the expert testimony. *See, e.g., Salmon v. United States*, 719 A.2d 949, 956 (D.C.1997); *Weeda v. District of Columbia*, 521 A.2d 1156, 1163 (D.C.1987).

6. As we stated in *McCord:*
The doctrine of avoidable consequences [also known as mitigation of damages] is to

be distinguished from the doctrine of contributory negligence. Generally, they occur—if at all—at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable.
362 A.2d at 725–26 (quoting 22 AM. JUR. 2D *Damages* § 31 (1965) (footnote omitted in original)).

7. Judgment was entered on the verdict, out of the parties' presence, slightly short of two weeks after the verdict was announced.

court jacket while preparing a motion for a new trial; the Hospital does not dispute that the parties were not told what it said contemporaneously. Instead, relying solely on her courtroom clerk's information that the note "was somewhat suggestive" in implying though not "reveal[ing]" a split jury, the judge ordered the note sealed and had the clerk instruct the jury to "re-write" it, then tell the parties ("inform you all") what she had ordered.

In proceeding as she did the judge erred. In *Hallmon v. United States*, 722 A.2d 26 (D.C.1998), this court held:

> [I]t was improper for the clerk to respond directly to the jury's note, and the trial judge should not have allowed it. Communications with the jury during its deliberations are just as much a part of the trial as the voir dire or the examination of witnesses, and thus are subject to the strictures of Criminal Rule 43, which requires ... that the defendant be present at every stage of the trial. With respect to notes to and from the jury, this court has consistently held that a defendant and his counsel have a right to be informed of all communications from the jury and to offer their reactions before the trial judge undertakes to respond. In this case, as in any case, the jury's message should have been answered in open court, and defense counsel should have been given an opportunity to be heard before the trial judge responded.

*Id.* at 27–28 (internal quotation marks and citations omitted). This civil case, of course, does not implicate Criminal Rule 43, but two things are apparent. First, the judge's decision to have the clerk address the jury created a risk of miscommunication even of as seemingly uncomplicated a directive as "re-write the note." (Indeed, as Foster points out, the record does not allow us to say with complete

certainty that the message was relayed, since the clerk was simultaneously charged with responding to the jury's request to keep deliberating after hours). More importantly, on the basis strictly of the clerk's interpretation, the judge found the risk that she herself would learn the extent of the jury's division too great to permit her to read the note; she sought no confirmation of the risk by consulting with the parties and their counsel.

■ In not reading the note, the judge undoubtedly acted in the good faith belief that learning of a numerical split would restrict her ability to deal with further developments. *See, e.g., Davis v. United States*, 669 A.2d 680, 684 (D.C.1995) (holding, in the criminal context, that instructions meant to overcome a jury deadlock are coercive and "not the kind of measured judicial response the situation demands" after "the jury, intentionally or inadvertently, [has] reveal[ed] its numerical division") (quoting *Smith v. United States*, 542 A.2d 823, 826 (D.C.1988)). But putting aside whether this rule applies with comparable force to civil cases, an issue we have not decided, the judge was not limited to the option of returning the note to the jury with directions to rewrite it. Indeed, that was not a *permissible* choice where the source of the concern was merely the courtroom clerk's assertion that the note was "somewhat suggestive." In some fashion or other, counsel for the parties should have been consulted about what to do before the note was returned unanswered. No case of ours implies that a judge's hands are tied as in *Davis* and *Smith, supra*, merely because the attorneys (but not the judge) have learned of a numerical division; practicality suggests that an instruction concerning who has— and has not—read the note can neutralize the risk of coercion in such a case.[8]

8. We reject the Hospital's argument that the judge's actions should be viewed under the plain error standard because Foster did not object to the judge's decision to return the note unread. By the time the judge explained

on the record what she had done with the note, the jury had already come in with its verdict, as yet unannounced. Answering the question posed by the note at that point would have been tantamount to directing the jury to

We do not wish to be seen as unfairly imputing to the judge knowledge of the confusion about the law which, unknown to her but known to us, the jury note revealed. Rather, the contents of the note are important in assessing the prejudice from the judge's failure to take alternative steps which she should have pursued in any case. The judge was on notice that the jury earlier had tended to blend the concepts of liability and damages and that her supplemental instruction was faulted— at least by one party—as "too amorphous to provide special guidance"; indeed, the judge herself had opined that the jury might be using damages as a crutch or "an easy way out" to avoid difficult issues of liability. At this sensitive stage of the proceedings, where the jury was signaling its need for additional guidance (and desire to keep deliberating), the decision to return the note without determining its contents was prejudicial error, leaving the jury in confusion about governing legal principles. Reversal is therefore required.[9]

* * * * * *

In light of this disposition, it is not strictly necessary for us to consider Foster's remaining assignments of error. We nonetheless make the following observations, in part to guide the course of any retrial and in part to highlight the dangers in a practice we cannot be sure is unique to any particular trial judge.

■ 1. In the statement of facts, we summarized the judge's response through the deputy courtroom clerk to the jury's request to be allowed to deliberate an extra forty-five minutes. In fact what the jury ended up being told is considerably less clear, and potentially much more troublesome. Because of the importance of the point, we set out the full colloquy on the subject:

> THE COURT: The second issue is in trying to accommodate the jurors' request to sit until 5:15, I did have to get permission from the Chief Judge to do that, Judge Paul Webber, who is the Acting Chief. He specifically gave his approval only if they could reach a verdict by 5:15, since that was the time they asked to sit until. *That was the information I relayed to Ms. Frances [the courtroom clerk] to relate to the jury.* Given that it is 20 minutes to five, it is a non-issue now, but I put it on the record because the plaintiff did object.

> MR. GLEASON [Counsel for the Hospital]: Your Honor, one clarification: The message being conveyed to the jury was they had to reach a verdict by 5:15, or come back on Monday?

> THE COURT: Right. He [Judge Webber] just wanted to know if we were going to spend the over-time funds that they were going to reach a verdict, and that would be the end of the case. If they can't reach a verdict, tell them no and have them come back on Monday.

> MR. GLEASON: I see.

> M[R]. NEWMAN [Counsel for Foster]: We just wanted to make sure they were going to deliberate without a time limit.

> THE COURT: That was just for monetary reasons, because of the budget we are not allowed to sit past a certain

---

rescind its verdict and reconsider it, a course fraught with mischief. Nor can Foster be faulted for not having objected when the note was first brought to the judge's attention, for, as the judge explained, she had informed the parties of her decision to return it unread only after that was carried out ("I told [the clerk] to seal it ... and inform you all that I *had indicated* to her to do so and have them re-write the note.").

9. Given the jury's clear expression of the fact that it was confused about the relationship between liability (in the form of "contributory negligence" not raised in the case) and mitigation of damages, we reject the Hospital's argument that the jury might after all have found no primary negligence on the Hospital's part, so that Foster's failure to request special interrogatories in the verdict form bars her from raising the mitigation issue. *See Robinson v. Washington Internal Med. Associates*, 647 A.2d 1140 (D.C.1994).

time without approval. That was the only way I got approval. It was not to tell them they had until 5:15, *only we weren't going to put out the money in terms of the Court Reporter and Ms. Frances to have them come back on Monday.* That is all.

All right, I do believe Ms. Frances conveyed that information to the jurors.

[MS. FRANCIS]: I did, Your Honor and counsel told me how they felt about it. [Emphases added.]

This colloquy well illustrates the danger, in all but strictly ministerial matters, of the court speaking to the jury indirectly through the clerk. One can imagine without difficulty the reactions of jurors told by the clerk that the court "wasn't going to put out the money" to pay the court reporter and clerk overtime in order to allow further deliberations, only "to have [the jury] come back on Monday." The point is not that this was said, but that we do not know exactly what *was* said on a sensitive subject. In matters of substance, including the response to virtually any jury note during deliberations, the clerk should not be expected to act as an oral messenger.

2. In case of retrial, the trial judge should reconsider the refusal to give Foster's requested instruction that the Hospital could be held liable if the jury found that any one of Foster's alternative theories of negligence had been proven. Although some of the (at least) six theories she alleged were interdependent, others appeared to be freestanding; the claim, for example, that induction of her labor and delivery was not medically necessary would seem independent of the claim that the delivery was performed in a negligent and traumatic manner. We do not opine further on the issue since the right answer may depend on how Foster tailors (or streamlines) her case at the new trial.

3. The trial judge's instructions on informed consent were not erroneous. The instructions, as given, were sufficient to allow Foster to argue that one aspect of the Hospital's negligence was in allowing a non-Board-certified resident to perform the delivery *without* obtaining Foster's consent to (or designation of) the resident.

■ 4. Lastly, this was not a *res ipsa loquitur* case, and the judge correctly refused to give that instruction. *See Quin v. George Washington Univ.,* 407 A.2d 580, 584 (D.C.1979) (doctrine inapplicable where the testimony showed "two equally plausible conclusions," one physician negligence and the other that the injury arose "from natural causes").

The judgment of the Superior Court is reversed and the case remanded for a new trial.

*So ordered.*

WAGNER, Chief Judge, concurring.

I concur in the result reached by the court. However, in my opinion, the error requiring reversal includes not only the trial court's decision to return the jury's note without determining its contents, but also its failure to respond adequately to the jury's earlier inquiry as to what to do if they determined that Foster did not make reasonable efforts to mitigate her damages. The original mitigation instruction had failed to inform the jury what effect a factual finding of a failure to mitigate should have on their verdict. In response to the note, the court simply instructed the jury only that it should "determine the [e]ffect, if any, your findings have on the plaintiff's claim for damages." This response did not go nearly far enough, particularly given the inadequacy of the court's earlier instruction. Rather, the re-instruction left the jury without guidance on a principle of law essential to their decision. Foster's counsel requested as a response to the jury's note "that the failure to minimize or mitigate damages does not preclude recovery, but only precludes those damages as might have been avoided by reasonable efforts of the plaintiff." This statement comports with the well-settled law on this

issue,[1] and, if given as an instruction, it would have cleared the jury's confusion. "Where a jury has demonstrated confusion, ... the trial judge may not allow that confusion to continue, but must make an appropriate and effective response." *Whitaker v. United States,* 617 A.2d 499, 501 (D.C.1992) (citing *Murchison v. United States,* 486 A.2d 77, 83 (D.C.1984)) (other citations omitted). Here, the jury made clear its difficulties, and the trial court did not " 'clear them away with concrete accuracy.' " *Id.* (quoting *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946)). The jury was left to determine the effect of a failure to mitigate on their verdict without guidance on the controlling legal principles. Their subsequent note, which went unanswered, demonstrates further their confusion. For these reasons, I agree that reversal is required.

---

1. *See Gamble v. Smith,* 386 A.2d 692, 695 n. 8 (D.C.1978); *Hill v. Liner,* 336 A.2d 533, 535 (D.C.1975) (citing *W.B. Moses & Sons v. Lockwood,* 54 App. D.C. 115, 120, 295 F. 936, 941 (1924)); *Brandon v. Capital Transit Co.,* 71 A.2d 621, 622–23 (D.C.1950); *see generally Edward M. Crough, Inc. v. Department of General Servs. of the District of Columbia,* 572 A.2d 457, 466–67 (D.C.1990).