Terrance A. JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 02–CF–742.

District of Columbia Court of Appeals.

Argued Nov. 4, 2003.
Decided Jan. 15, 2004.

Axel Kleiboemer, appointed by the court, for appellant.

Jessie K. Liu, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Ronald W. Sharpe, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, REID, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

After a jury trial, appellant Terrance A. Johnson ("Johnson") was convicted of carrying a pistol without a license ("CPWL"),[1] possession of an unregistered firearm,[2] and unlawful possession of ammunition.[3] On appeal, Johnson contends that the trial court erred when it: 1) instructed the jury that it could find Johnson guilty of CPWL if it found that he had constructive possession of the weapon, 2) maintained a jury note screening procedure that deprived Johnson of the right to be present during all stages of the trial, 3) failed to poll and instruct the jury when it indicated an inability to reach a unanimous verdict, and 4) sentenced Johnson for CPWL in excess of the statutory scheme. Finally, Johnson alleges the Clerk of the Superior Court's failure to process his notice of appeal for five years is a denial of his due process rights. Although most of the issues in this appeal can be addressed summarily, two issues—the procedure for screening jury notes and the legality of Johnson's sentence—require greater discussion. We remand Johnson's sentence for the CPWL conviction to the trial court for resentencing in a manner consistent with this opinion, but otherwise affirm his conviction in all respects.

## FACTUAL SUMMARY

Johnson was arrested on December 7, 1994 in an alley near the 1000 block of E and F Streets, Northwest, in Washington, D.C. Jorge Benitez, who worked in the neighborhood, testified that he saw John-

1. In violation of D.C.Code § 22–3204(a) (1981), recodified at D.C.Code § 22–4504(a) (2001).

2. In violation of D.C.Code § 6–2311(a) (1981), recodified at D.C.Code § 7–2502.01 (2001).

3. In violation of D.C.Code § 6–2361(3) (1981), recodified at D.C.Code § 7–2506.01 (2001).

son park his car in an alley, pull a gun from underneath the driver's seat, and hide it under his coat. Benitez then saw Johnson leave his car in the alley and walk away. Benitez alerted the police and described Johnson to officers, who set up surveillance of the car and broadcast a lookout for an African American man wearing a leather jacket. Approximately thirty to forty minutes later, Johnson came back to the alley with three individuals. At that point, officers approached the group and ordered them to stop at the rear of the car. Every person complied except Johnson, who got into the car, "slid from the driver's side of the vehicle approximately halfway between the driver's seat and the passenger's seat," reached into his jacket, and ducked down.

Police then apprehended Johnson, searched his car, and recovered a .32 caliber Colt automatic handgun loaded with four bullets. Testimony revealed that during the surveillance, no other individuals had approached the car, and none of the other individuals with Johnson was wearing a leather jacket. Johnson was charged with CPWL, possession of an unregistered firearm, and unlawful possession of ammunition. After a jury trial, Johnson was found guilty on all three charges.

## ANALYSIS

### A. Jury Instructions

■ At the close of evidence, the trial court instructed the jury that it could find Johnson guilty of CPWL based on either an actual or constructive possession theory. To find Johnson guilty of CPWL under a constructive possession theory, the trial court instructed the jury that it must find that Johnson "knowingly ha[d] both the power and the intent at a given time to control [the weapon]," and that the weapon was "convenient of access to the defendant" and "within his reach." During de-

liberations, the jury expressed some confusion about the difference between CPWL and possession of an unregistered firearm. In response, the trial court called the jury back into the courtroom and reinstructed the jury on actual and constructive possession. The court informed the jury that the elements of constructive possession for possession of an unregistered firearm and CPWL were different. Whereas a defendant could be found guilty of possession of an unregistered firearm under a constructive possession theory by knowingly having "both the power and the intent at a given time to control it by himself or herself or through another person," the court stated that more was needed for CPWL. The court emphasized that in order for the defendant to be found guilty of CPWL under a constructive possession theory, the jury must find that the defendant not only had constructive possession of the weapon, but that the weapon was *conveniently accessible to and within reach* of the defendant. The court then gave examples of the difference between the two charges. Johnson contends that the trial court's instructions confused the jury, and prompted it to return a verdict of guilty on this charge.

Although it is a close question whether Johnson properly preserved this issue for appeal, we find that he sufficiently challenged the trial court's inclusion of the constructive possession instruction. We, therefore, review the trial court's instructions for abuse of discretion. *See Tyler v. United States,* 495 A.2d 1180, 1183 (D.C. 1985) (stating that "[t]he decision on what further instructions, if any, to give in response to a jury question lies within the sound discretion of the trial court").

■ We see no error in the trial court's instructions. In fact, the trial court correctly stated the law with respect to a

CPWL conviction based on a constructive possession theory. *See White v. United States,* 714 A.2d 115, 119 (D.C.1998). Although Johnson argues that the jury was somehow confused, there is no record support for his contention. Once the jury was reinstructed, there were no further notes sent to the court indicating any confusion. Because there is no factual support for Johnson's contention that the jury was confused, and because a jury is presumed to follow the trial court's instructions, we find no basis to disturb the jury's verdict. *See McCoy v. United States,* 760 A.2d 164, 186 (D.C.2000).

### B. Coercion of Jury Verdict

#### 1. Jury Note Screening Procedure

Johnson argues that the trial court's screening procedure for jury notes "flawed the entire proceedings below" and coerced the jury's verdict.[4] Specifically, Johnson refers to the manner in which the trial court handled a note it received from the jury on May 14, 1997. The note was never provided to the court or the parties because the clerk returned the note to the jury after reviewing its contents. The court had previously instructed the courtroom clerk to screen all notes from the jury to determine whether the notes contained inappropriate information concerning the jury's numerical division on the defendant's guilt or innocence. The clerk was apparently instructed to return such a note to the jury and inform the jury that the court could not read the note. On May 14, the clerk apparently received such a note and returned it to the jury with the court's message. The court neither al-

lowed counsel to read the note nor read the note itself. The court, however, did inform the parties that a note had been sent that contained information inappropriate for the court to know. The courtroom clerk informed the court and the parties that other than the inappropriate information, the note also contained the jury's request to go home at that point and to continue deliberating the following Monday. The court and parties then discussed how to proceed in light of the jury's note. Although Johnson conceded at oral argument that the note most likely contained polling information indicating the jury's numerical division, he argues that the court's screening procedure denied him his right to be present during all stages of the trial.[5] *See* Super. Ct. Crim. R. 43 ("Rule 43").

 Because Johnson failed to challenge the trial court's screening process at trial, we review this issue for plain error. *See Jones v. United States,* 813 A.2d 220, 223 (D.C.2002). "The error must be (1) 'obvious or readily apparent,' and 'clear under current law'; and (2) 'so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Hasty v. United States,* 669 A.2d 127, 134 (D.C.1995) (quoting *Foreman v. United States,* 633 A.2d 792, 795 (D.C.1993)).

Upon review of the record, we do not find that plain error resulted from the trial court's jury note screening procedure. Even assuming that the court's failure to provide the May 14 note to counsel was an error of law, the error was not "so clearly prejudicial to substantial rights" as to

---

4. Johnson fails to support his assertion of coercion with any analysis beyond bald allegations. Because he has failed to provide us with any basis for concluding that the screening procedure alone coerced the jury's verdict, his argument is wholly unpersuasive.

5. Because the May 14 note was never preserved for the record, we do not know the exact contents of the note. So that records for future appeals are complete, we stress the importance of preserving every note from the jury in the record.

jeopardize the fairness of the trial. *Hasty,* 669 A.2d at 134.

Johnson relies on *Smith v. United States,* 542 A.2d 823 (D.C.1988), for the proposition that the court's failure to disclose the May 14 note deprived him of the right to be present at all stages of the trial and requires reversal of his conviction in this case. Although we held in *Smith* that the court's failure to inform the defendant of the jury note (that indicated a numerical split among the jurors) was error, our decision to reverse the judgment in that case was based on the prejudice we perceived Smith to have suffered because of the court's subsequent action. In *Smith,* we held that it was conceivable that the court's failure to inform the jury that it had not read its note before delivering a *Winters*[6] anti-deadlock instruction would lead the jurors in the minority to believe that the instruction was aimed at them, thus resulting in a coerced verdict. Nothing in *Smith* suggests, however, that absent the court's actions in response to the note, we would have reversed the judgment in that case.

Similarly, in *Foster v. George Wash. Univ. Med. Ctr.,* 738 A.2d 791 (D.C.1999), a civil case, it was not the trial court's mere failure to share the jury's note with counsel that required reversal. What concerned this court was the fact that the jury note at issue in *Foster* asked for clarification of the substantive law in the case. Our reversal was based on the fact that, because the jury through previous notes had expressed confusion about the law, the court violated the plaintiff's right to meaningfully participate in all stages of the trial by responding without first consulting with counsel. We concluded that such a failure to consult under the circumstances where the jury had previously expressed confusion about the law, created "an unaccepta-ble risk that the verdict stemmed from a mistaken understanding of the law," and this uncertainty was enough to undermine our confidence in the verdict. *Id.* at 792.

■ In this case, unlike *Smith* and *Foster,* the court's failure to disclose the jury note to counsel does not require reversal because Johnson has failed to show that any prejudice flowed from that error, and we can discern none from the record. *See Hasty,* 669 A.2d at 134 (requiring a showing of prejudice to constitute plain error).

Here, unlike in *Smith,* the trial court did inform the jury that it had not read the note. More importantly, however, the trial court never gave the jury *any* instruction, let alone a *Winters* instruction, after the jury delivered its note to the court. In fact, the court's only response was to grant the jury's request to go home and continue deliberating on another day. Given these facts, we do not see how the mere failure to disclose the note in this case coerced the verdict, or in any way prejudiced Johnson. This case is also distinguishable from the circumstances in *Foster* because, unlike the situation in that case, there is no indication that the court's handling of the jury note created a risk that the jury's verdict was based on a misunderstanding of the law.

Johnson's case is more akin to the circumstances in *Hallmon v. United States,* 722 A.2d 26 (D.C.1998), in which we found a violation of Rule 43 to be harmless due to lack of prejudice. In *Hallmon,* the jury sent a note to the court during deliberations asking for a copy of the jury instructions. The courtroom clerk received the note, and wrote back to the jury that, although the jury could not have a copy of the instructions, any part of the instructions could be reread to the jury in open

6. *See Winters v. United States,* 317 A.2d 530 (D.C.1974).

court. We found that it was error for the courtroom clerk to respond directly to the jury, thereby depriving the defendant of the opportunity to respond. The error was harmless, however, because the appellant had failed to show prejudice, and we could not discern any prejudice in the record. Our finding of harmlessness was supported by the fact that the jury's note was "non-substantive," in that it merely asked for a copy of the jury instructions. *Id.* at 28. We were unable to see how the clerk's direct response to the jury, even though it violated Rule 43, required reversal in that case.

Like the appellant in *Hallmon,* Johnson has shown no prejudice from the court's failure to disclose the note. This case, in fact, presents less egregious circumstances than those in *Hallmon* or our more recent decision in *Johnson v. United States,*[7] 804 A.2d 297 (D.C.2002), because, at most, the jury merely revealed its numerical division and asked to go home and continue deliberations another day. There is no indication in the record that the jury asked for a reinstruction or an explanation on the substantive law in the case. Any argument that the court's failure to disclose the note affected Johnson's substantial rights is purely speculative, and we fail to find any

plain error in the trial court's handling of the jury note.[8]

### 2. Failure of Trial Court to Deliver Anti–Deadlock Instruction

Johnson next argues that the court's failure to poll the jury and deliver an anti-deadlock instruction to the jury resulted in a coerced verdict. After less than three days of trial, the jury began deliberations on May 9, 1997. Thereafter, the jury sent the court a series of notes. On May 12, the jury's note stated: "What happens if 'we' cannot agree on all three charges? ... Must all three charges be agreed upon?" In response to this question, the court instructed the jury to "continue and try to agree on all of the charges. At the time you find that you absolutely cannot we'll discuss that at that time." About two hours later the same day, the jury sent another note: "We can't come to an agreement? [sic] Perhaps we can all agree by tomorrow." The court dismissed the jury for the day, but did not address the jury's inability to reach a decision. The next day, the jury sent the court another note. This note stated: "Can we skip a day, Wednesday and come back Thursday? We still cannot come to a united decision

7. In *Johnson,* the jury sent a note to the court asking for guidance on a substantive area of the law. The courtroom clerk, who determined the note might be inappropriate to share with the court, sent the note back to the jury and asked it to rewrite the note. Later, the jury sent the court a rewritten note, and the court responded with a supplemental instruction after consulting with counsel. We held that the court's mere failure to disclose the note to counsel did not constitute reversible error because there was no prejudice to the defendant that resulted from that error. *See Johnson,* 804 A.2d at 307.

8. A fair reading of our cases suggests that a proper way of addressing situations where juries have attempted to inform the court of polling information is for the clerk to retain

the note and let the court and counsel know that the jury has sent out a note that contains inappropriate polling information. After consultation with counsel, the court should respond by either sending the jury a note or calling the jury back into the courtroom to explain to the jury that: 1) the court has been informed that the jury sent a note that included a numerical division on the question of the defendant's guilt or innocence, 2) the court has not read the note per the court's instructions to the courtroom clerk and is, therefore, not aware of the specific polling information contained in the note, and 3) that the court will now reinstruct the jury using Standardized Criminal Jury Instruction No. 2.75 and allow the jury to resume deliberations.

on all three counts. How long before it would be a mistrial?" The court responded by telling the jury that, because of scheduling conflicts, the court could not allow the jury to skip a day of deliberations. The court did not respond to the jury's question about a mistrial. On May 14, as mentioned previously, the jury asked for permission to leave early and return the following Monday, and the court granted the request. Finally, on Monday, May 19, the jury deliberated for approximately ten minutes and returned guilty verdicts on all three charges.

■ The trial court has discretion "in dealing with jury polls and instructions." *Harris v. United States,* 622 A.2d 697, 705 n. 14 (D.C.1993). We, therefore, review the trial court's rulings for abuse of that discretion. *Id.* Johnson alleges that the "hints" in the jury notes should have indicated to the court that the jury was deadlocked, and the court's failure to give an anti-deadlock instruction ultimately coerced the verdict.

■ We have held that an inquiry into whether a jury verdict was coerced is made from the perspective of the jurors, evaluated in context, and based on several factors. *See Harris,* 622 A.2d at 701–06. None of the factors we set forth in *Harris* are present here, and Johnson has not pointed to any of those factors as supporting his contention that the jury was coerced. Because "the trial court has the right and duty to urge a jury to work diligently to reach a fair and freely arrived

at verdict," we see no abuse of discretion in the trial court's failure to give an anti-deadlock instruction.[9] *Id.* at 701.

### C. Legality of Johnson's Sentence

Johnson was found guilty of carrying a pistol without a license and received a sentence of two to six years imprisonment. He alleges that the trial court imposed an excessive sentence under D.C.Code § 22–3204 (1981) because the court stated that it was sentencing him on both "the underlying charge of carrying a pistol without a license to one to three years" *and* "on the repeat papers to one to three consecutive." The trial court failed to explain further why it used this formulation. In the Judgment and Commitment Order, however, the court noted that it was sentencing Johnson to two to six years imprisonment for Count D, which the indictment listed as "Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C.Code, Section 3204(a)." [10]

■ Generally, our review of sentencing is extremely limited, and a sentence which does not exceed the statutory limit must be permitted to stand. *See Powers v. United States,* 588 A.2d 1166, 1169 (D.C. 1991) (quoting *Williams v. United States,* 571 A.2d 212, 214 (D.C.1990)).

■ In this case, although the sentence does not exceed the statutory limit if the trial court was sentencing Johnson under § 3204(a)(2), the court's articulated ratio-

---

9. It is ironic that Johnson alleges that the failure of the trial court to give an anti-deadlock instruction led to coercion of the verdict given our recognition that an anti-deadlock instruction has the potential to be highly coercive. *See Davis v. United States,* 669 A.2d 680, 683–84 (D.C.1995).

10. Under D.C.Code § 22–3204(a) and § 22–3216 (1981), imprisonment for carrying a pistol without a license may not exceed one year.

If, however, the defendant carried the pistol outside his home or place of business, then the court may sentence him to a maximum of five years imprisonment. *See* § 22–3204(a)(1). If the defendant had been previously convicted of carrying a pistol without a license or of a felony, then the court may sentence him to a maximum of ten years imprisonment. *See* § 22–3204(a)(2).

nale for sentencing Johnson to a term of two to six years was that he was being sentenced to one to three years on the carrying a pistol without a license charge *and* one to three years on his prior convictions. Under D.C.Code § 22–3204, however, the trial court had the option of sentencing Johnson under *either* (a)(1) for carrying a pistol without a license outside his home or business *or* (a)(2) for having prior felony convictions, but not both. It appears from the court's statements that it was sentencing Johnson under both (a)(1) and (a)(2), although there is no such indication on the Judgment and Commitment Order. Thus, looking at the record as a whole, there is support for both propositions. If the court sentenced Johnson to two to six years because of Johnson's previous convictions (without regard to the fact that Johnson carried a pistol without a license outside his home or business), the sentence would be a legal one because there is no dispute that Johnson had previous felony convictions. If, however, the court misconstrued the statute and intended to sentence Johnson both for having prior convictions *and* for carrying a pistol without a license outside his home or business, the court erred. Because the basis

for the court's sentence is unclear to us, we remand the case to the trial court for re-sentencing in a manner consistent with this opinion.[11]

### D. Delay in Processing of Notice of Appeal

Johnson argues that the inexcusable five-year delay of the Clerk of the Superior Court to process his notice of appeal is a violation of his due process rights. In support of his argument, Johnson relies on *United States v. Alston,* 412 A.2d 351 (D.C. 1980). Nothing in *Alston,* however, supports his contention that an unusual delay in processing an appeal would be grounds for this court to order a dismissal of his criminal conviction absent some reversible error. Had we found error in this case that required us to reverse his conviction, Johnson's alternative argument that justice demands that the government not be allowed to retry his case may have had merit. Because we find no such reversible error here, however, Johnson's argument on appeal is moot.

Therefore, we remand Johnson's sentence for the CPWL conviction to the trial court for resentencing in a manner consis-

---

11. Johnson also argues that it was improper for the trial court to enhance his sentence under § 3204(a)(2) because the count of carrying a pistol without a license (prior felony or CPWL conviction) was dismissed prior to trial. It appears that his argument is based on a belief that in order for his sentence to be enhanced by his prior convictions, a grand jury was required to indict him on those grounds. But no indictment was ever necessary for his sentence to be enhanced by his prior convictions. *See Almendarez–Torres v. United States,* 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (holding that where a federal statute allowed an offender's sentence to be enhanced because of prior convictions, the fact of prior convictions was not required to be charged in the indictment); *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding

that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Because no indictment was necessary for Johnson's sentence to be enhanced by his prior convictions, his argument is wholly without merit.

It is important to note that the count in the indictment for carrying a pistol without a license (prior felony or CPWL conviction) was dismissed because it was duplicative. Although both counts (CPWL outside home or business and CPWL prior conviction) in the indictment arose out of the same incident, they were pled separately, providing Johnson with additional notice that the government intended to seek enhancement of his sentence should he be convicted.

tent with this opinion, but otherwise affirm his conviction in all respects.

*So ordered.*