Thomas GATHY, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–1962.

District of Columbia Court of Appeals.

Argued May 20, 1999.

Decided June 1, 2000.

Gerald I. Fisher, Washington, DC, with whom Kristin Ring was on the brief, for appellant.

Alyse Graham, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth H. Danello, Ann K.H. Simon, and Eumi L. Choi, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

TERRY, Associate Judge.

Appellant was convicted of aggravated assault while armed, in violation of D.C.Code §§ 22–504.1 and 22–3202 (1996),[1] for breaking a beer bottle on the face of a bouncer at a local night club. In his opening brief on appeal, he challenged his conviction on three separate grounds. He claimed that the trial court's failure to instruct the jury on the definition of the phrase "serious bodily injury," as used in the aggravated assault statute, section 22–504.1, rendered the statute unconstitutionally void for vagueness. He also contended that the aggravated assault statute applies only to unarmed assaults, and that his motion for judgment of acquittal based on that ground should therefore have been granted. Finally, he asserted that the means by which an aggravated assault is committed, in this case a beer bottle, cannot also establish the "while armed" element of the enhancement statute, section 22–3202. We find all of these arguments meritless.

Shortly after appellant and the government had filed their briefs, this court issued its opinion in *Nixon v. United States*, 730 A.2d 145, *rehearing denied*, 736 A.2d 1031 (D.C.1999), in which we adopted the

---

1. Section 22–504.1 is the substantive statute defining the crime of aggravated assault. See note 2, *infra*. Section 22–3202 authorizes—and in some cases requires—an enhanced penalty for someone who commits a crime of violence "when armed with or having readily available any ... dangerous or deadly weapon...." The definition of "crime of violence," which appears in another statute, D.C.Code § 22–3201(f), includes aggravated assault.

definition of "serious bodily injury" set forth in the recently enacted sexual abuse statute, D.C.Code § 22–4101(7), for the purposes of the aggravated assault statute. Appellant then filed his reply brief, challenging, for the first time on appeal, the sufficiency of the government's proof of serious bodily injury. After oral argument, we directed the parties to submit supplemental briefs on the issues raised by our decision in *Nixon.* Now, having considered those supplemental briefs, we hold that the trial court erred in failing to instruct the jury on the definition of "serious bodily injury" and that the error requires us to reverse the conviction. However, since we find no other error, and since the only error that we do find involves an element of aggravated assault (serious bodily injury) which is not an element of its lesser included offense, assault with a dangerous weapon (ADW), on remand appellant shall stand convicted of ADW unless the government elects to retry him on the original charge.

# I

On June 28, 1996, appellant Thomas Gathy and his son Andrew, residents of Ohio, were visiting Mr. Gathy's other son, Gregory, who lived in Arlington, Virginia. That evening all three of the Gathys, along with Gregory's roommate, went out to a late dinner and then decided to visit a strip club in downtown Washington known as the 1720 Club. When they arrived there shortly after midnight, Mr. Gathy and his sons went in to get a table while the roommate parked the car. At the door, the club's manager, Chris Bretherick, asked Gregory and Andrew for identification. Bretherick noticed that the picture on Andrew's identification card was marred, so he asked Andrew for a second form of identification. According to Bretherick, Andrew "started giving [him] an attitude," but eventually he produced another identification document. Concerned about the group, Bretherick admitted them into the club but instructed two security employees, José Segura and Jeffrey Nilson, to "keep an eye on them because of the attitude they had displayed at the door."

Once inside, the Gathys were directed to the back of the room, where they ordered a round of beers from a waitress named Mary Davis. Ms. Davis returned with four bottles of beer. As she was leaving the table, Ms. Davis noticed Gregory standing on either a chair or a banister, attempting to climb up to the second level of the club in order to tip a dancer who was on the second floor stage. A bouncer—apparently Mr. Segura—motioned to Gregory to get down. Gregory began to explain that he was trying to tip one of the dancers, but Segura grabbed his arm and pulled him down. Gregory attempted to release his arm from Segura's grasp, but Segura pushed Gregory's arm behind his back and forced him toward the front door. Alerted by the commotion, the other bouncer, Jeffrey Nilson, quickly approached the group. Appellant Gathy, who believed Nilson was "gonna harm my son or me," lunged upward and swung his beer bottle at Nilson's face. The bottle broke, and Nilson was cut and began to bleed. Other club employees came forward from other parts of the club and ushered the group out the front entrance. The altercation continued and escalated outside, with blows apparently delivered both by Gathy's group and by club employees.

Nilson was bleeding profusely when the police arrived. He received forty-eight stitches on his face, and doctors shaved a chipped piece of bone from his nose. Despite attempts by hospital personnel to clean the glass from his hair, Nilson cut his hands on "thousands of particles of glass" when he washed his hair at home later that night. Two large photographs of Nilson's injuries were admitted into evidence at trial. The first was taken on the night of the incident and showed Nilson's face covered with blood and a deep cut across his nose and between his eyes. The

second picture, taken a week later, showed the scars and stitches on Nilson's face. During his testimony Nilson pointed out to the jury where the stitches had been, but no other evidence was presented as to the extent of the scarring. The court concluded that the cuts had left no permanent scars.

## II

Gathy noted this appeal from his conviction, arguing *inter alia* that the aggravated assault statute, D.C.Code § 22–504.1, was unconstitutionally vague because the term "serious bodily injury" was not defined in the statute with sufficient clarity.[2] Shortly after the government filed its brief, we issued our opinion in *Nixon v. United States, supra,* in which we adopted the definition of "serious bodily injury" that appears in D.C.Code § 22–4101(7), the sexual abuse statute,[3] to determine whether the government had met its burden to prove "serious bodily injury" under the aggravated assault statute.

Thereafter, in his reply brief, Gathy raised a new argument challenging the sufficiency of the government's proof of serious bodily injury and citing our holding in *Nixon.* At oral argument counsel for both parties discussed, at some length, the applicability of *Nixon* to this case. Believing that the issues merited further exploration, we issued an order directing the parties to file supplemental briefs addressing three questions:

1. What is the effect on this case, if any, of this court's recent decision in *Nixon v. United States* ... ?

2. May appellant now contend that the evidence of aggravated assault while

armed was insufficient, when that issue was not raised in his original brief but was first mentioned in his reply brief? *See, e.g., Stockard v. Moss,* 706 A.2d 561, 566 (D.C.1997) ("this court [does] not ... consider arguments raised for the first time in a reply brief") (citing cases); *Herbert v. National Academy of Sciences,* 297 U.S.App.D.C. 406, 410, 974 F.2d 192, 196 (1992) (same) (citing cases). To what extent, if any, do these authorities apply to the question of whether the evidence is sufficient to support a conviction?

3. If this court finds insufficient evidence of, or instructional error with respect to, the element of "serious bodily harm" in the aggravated assault charge, but no other reversible error, may this court authorize the trial court, with the consent of the government, to enter a judgment of conviction of the lesser included offense of assault with a dangerous weapon (ADW)? *See, e.g., Rutledge v. United States,* [517 U.S. 292, 294,] 116 S.Ct. 1241, 1250[, 134 L.Ed.2d 419] (1996); *Willis v. United States,* 692 A.2d 1380, 1382 (D.C.1997) (affirming conviction of ADW, in lieu of retrial, after prior reversal of conviction of armed assault with intent to murder); *Zellers v. United States,* 682 A.2d 1118, 1122 (D.C.1996) (reducing first-degree theft conviction to second-degree theft); *Austin v. United States,* 127 U.S.App.D.C. 180, 192–194, 382 F.2d 129, 140–143 (1967) (holding that federal appellate court has power under 28 U.S.C. § 2106—equivalent to D.C.Code § 17–306—to modify conviction by reducing it to a lesser included offense), *overruled*

---

**2.** Section 22–504.1 provides in relevant part:

(a) A person commits the offense of aggravated assault if:

(1) By any means, that person knowingly or purposely causes serious bodily injury to another person; or

(2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury.

**3.** Section 22–4101(7) provides:

"Serious bodily injury" means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

*in part, United States v. Foster*, 251 U.S.App.D.C. 267, 783 F.2d 1082 (1986).

■■■ In its supplemental brief the government conceded—correctly, we think—that the trial court should have instructed the jury on the definition of "serious bodily injury" which we adopted in *Nixon*, or something very close to it. *See Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ("a 'new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review ... with no exception for cases in which the new rule constitutes a "clear break" with the past' " (citation omitted)). We also agree with the government that the trial court's failure to instruct the jury according to the *Nixon* definition requires us to reverse the conviction.[4] However, because the remaining issues addressed in the supplemental briefs are still relevant to future proceedings in this case, we turn our attention to them.[5]

### III

■■■ "It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief." *Stockard v. Moss*, 706 A.2d 561, 566 (D.C.1997) (citing cases). Thus, because appellant did not raise the issue of the sufficiency of the evidence until his reply brief, we would not ordinarily address it at all. However, this case presents unusual circumstances. First, although the issue was not raised

until the reply brief, the government has not been substantially prejudiced by appellant's failure to raise it in his opening brief. It has had the opportunity to argue the sufficiency of the evidence and to file a supplemental brief on the subject. *See Herbert v. National Academy of Sciences*, 297 U.S.App.D.C. 406, 410, 974 F.2d 192, 196 (1992) ("argument discussed for the first time in reply would be manifestly unfair to the appellee who ... has no opportunity for a written response"). We note also that in a post-argument letter submitted under a relevant rule of this court,[6] the government acknowledged that *Nixon* raised the crucial question of "whether, applying [the new] definition, the evidence was sufficient to sustain appellant's conviction. If it was not, the other issues become moot." Thus, even though appellant had not previously raised the issue, the government recognized its importance and was not taken by surprise.

Second, although he did not initially contest the sufficiency of the evidence, appellant did challenge the trial court's failure to instruct the jury on the definition of "serious bodily injury" in his vagueness argument. Though the arguments are not the same, they are related. The basis of Gathy's vagueness challenge, based in large part on the Model Penal Code, was that "serious bodily injury" required proof of a substantial risk of death, protracted loss or impairment of some bodily function, or serious permanent disfigurement.[7] He

---

4. We emphasize that we do not hold that the aggravated assault statute is void for vagueness, as appellant contends. We hold only that the trial court erred by not instructing the jury in a manner consistent with *Nixon* and that the error requires reversal.

5. We reject appellant's contention that the aggravated assault statute was intended to apply only to assaults that result in serious bodily injury but in which no weapon is used. *McCall v. United States*, 449 A.2d 1095 (D.C. 1982), on which he relies, does not support his assertion that the "while armed" enhancement of section 22–3202 cannot be applied to aggravated assaults when the means of committing the assault, *i.e.*, the beer bottle, was

also the basis for the "while armed" element. In *McCall* we held that section 22–3202 could not be applied to a charge of ADW because the use of "a dangerous weapon" is already included as an element of *that* offense, so that "ADW while armed"—*i.e.*, assault with a dangerous weapon while armed with a dangerous weapon—would be redundant. *Id.* at 1096. There is no comparable language in the aggravated assault statute, which does not even mention the word "weapon."

6. D.C.Ct.App.R. 28(k).

7. Defense counsel specifically asked the court to instruct the jury on the meaning of "serious bodily injury" according to the definition

argued that the court's failure so to instruct the jury rendered the statute unconstitutionally vague. In the trial court appellant had challenged the sufficiency of the government's evidence of serious bodily injury in his motion for judgment of acquittal, and again in a memorandum in support of his post-trial motions for judgment of acquittal and a new trial. Although he did not specifically raise them again, he alluded to those arguments in his opening brief and noted that "the government presented no evidence that Mr. Nilson suffered lasting physical injuries."

Third, because *Nixon* was not issued until after appellant filed his opening brief, he was unaware of the new standard or how it was to be applied in a trial setting. Moreover, it is entirely possible that the sufficiency of the evidence of serious bodily injury could be an issue that would be dispositive on remand, should the government decide to retry appellant on the charge of aggravated assault while armed. Thus judicial efficiency favors its resolution now rather than later. Therefore, given the unusual circumstances of this case, we relax our well-established rule and consider the sufficiency of the evidence of aggravated assault while armed.

■■■ "In considering a claim of insufficient evidence, this court 'must review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence.'" *White v. United States*, 714 A.2d 115, 118 (D.C.1998) (quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987)). "It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury." *Williams v. United States*, 357 A.2d 865, 867 (D.C.1976); ac-

cord, *e.g.*, *Nelson v. United States*, 601 A.2d 582, 593 (D.C.1991) (citing cases).

■■■ In order to convict Mr. Gathy of aggravated assault while armed, one of the elements that the government had to prove beyond a reasonable doubt was that Gathy caused "serious bodily injury" to Mr. Nilson when he hit him in the face with the beer bottle. *See* D.C.Code § 22–504.1, *supra* note 2. To meet that burden, the government was required to show that the injury to Nilson "involve[d] a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Nixon*, 730 A.2d at 149 (quoting D.C.Code § 22–4101(7)).

In *Nixon* the defendant was charged with two counts of aggravated assault while armed. The evidence at trial showed that Nixon had shot two men, Jones and Ball, hitting one of them in the ear and striking the other in the neck or upper shoulder. A third victim of the assault, Taylor, who fortuitously escaped the gunfire unharmed, testified that he saw the other two victims as they ran from the scene of the shooting. He testified that Jones "had a hole right here. And a hole coming out behind his ear and it was blood coming out." 730 A.2d at 148. He described Ball as "grabbing his shoulder and the back of his shirt was bleeding like he got hit in the back of his neck or his shoulder." *Id.* Despite these injuries, Jones and Ball were able to run after they were shot, which showed that neither was unconscious or suffering from any immobilizing pain. No other evidence was presented to prove the extent of their injuries. Despite the fact that the two men had been shot at fairly close range, we held that the government had "failed to present sufficient evidence to show that [the victims'] injuries involved a substantial risk of death, unconsciousness, extreme physical

given in section 210.0 of the Model Penal Code, but the court refused to do so, saying,

"I don't think it accurately states what the law is in the District of Columbia."

pain, protracted and obvious disfigurement, or protracted loss or impairment of the functions of a bodily member, organ, or mental faculty." *Id.* at 151. Specifically, we focused on the absence of testimony from either victim or from "health care professionals" concerning the injuries and how they affected the victims, and on the lack of any "medical records detailing the nature and extent of their injuries." *Id.* Thus, although it was likely that the victims did suffer serious bodily injuries when they were shot, it was not a certainty. *See Williams v. State,* 696 S.W.2d 896, 898 (Tex.Crim.App.1985), cited in *Nixon,* 730 A.2d at 150–151. Without any evidence about their nature or extent, the jury could only speculate about whether the injuries were "serious bodily injuries" within the meaning of the aggravated assault statute.

By contrast, in the case at bar, the government presented significant evidence of the nature and extent of Mr. Nilson's injuries. Mr. Nilson testified:

> After I was struck ... I buried my head in my hands and crouched down.... I was in total shock.... I didn't know what happened. I was in pain and semi-unconscious of what happened. And I remembered I staggered back a few steps, and I couldn't hear the ... music or anything.
>
> I think I was just in total shock of what happened and then I, maybe ten to fifteen seconds after having my hands in my face, I came to an erect position and saw blood and beer all over me.
>
> When I stood up, my hands were covered in blood, and my shirt was covered in blood, and my shirt was also wet. Some was from alcohol, and there was glass on my face and in my hair.

When he followed the others outside, Nilson said, he "wasn't totally coherent" and "didn't know what was going on," but "just wanted to make sure ... everything was okay outside." Mr. Nilson also described the medical treatment he received, beginning with his being taken by ambulance to the emergency room at George Washington University Hospital. There he received forty-eight stitches for the cuts running down the middle of his face, and medical personnel "had to shave a piece of a bone" in his nose which had been chipped. Mr. Nilson showed the stitches on his face to the jury.

The government introduced two photographs detailing Mr. Nilson's wounds. Both photographs are included in the record on appeal. The first, which was taken in the ambulance within minutes after the assault, reveals deep cuts around his left eye and nose, as well as extensive bleeding. The second was taken a week later and shows two lacerations, one over his left eyebrow and the other extending from the bridge of his nose across his left cheek. Finally, medical records established that Mr. Nilson's "repair level" was "intermediate" and that the forty-eight stitches were "layered."

Although Mr. Nilson was not rendered unconscious by the blow and walked out of the night club on his own almost immediately after the assault, he did testify that he was "semi-unconscious," "in total shock," and "[not] totally coherent." From such testimony a reasonable juror could reasonably conclude that there was a "substantial risk of unconsciousness." Mr. Nilson also testified that he experienced pain, but he never described it in terms that would indicate it was "extreme." However, a reasonable juror could infer from the nature of his injuries, and from his reaction to them, that the pain was extreme. Finally, though the court remarked that, at the time of trial, there were no permanent scars, common experience teaches that wounds requiring multiple stitches are likely to leave some scarring, however faint, and that scars in the center of one's face are more visible and prominent—and thus more disfiguring— than they might be elsewhere. *See Perkins v. United States,* 446 A.2d 19, 26 (D.C.1982) (defining "disfigure" as "to make less complete, perfect, or beautiful in appearance or character"). Moreover, the

photograph taken a week after the incident shows that the disfigurement of Mr. Nilson's face was obvious and long-lasting— "protracted," in the language of the statute—even if not permanent. We hold, therefore, that the government presented sufficient evidence from which a reasonable jury could find, beyond a reasonable doubt, that Nilson suffered serious bodily injuries involving a substantial risk of unconsciousness, extreme physical pain, or protracted and obvious disfigurement.

## IV

Finally, having found instructional error but sufficient evidence, we must decide what happens next. This court has held on several occasions that it " 'may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense.' " *Willis v. United States,* 692 A.2d 1380, 1383 (D.C.1997) (citing *Rutledge v. United States,* 517 U.S. 292, 306, 116 S.Ct. 1241 (1996)); *see, e.g., Zellers v. United States,* 682 A.2d 1118, 1122 (D.C.1996) (directing that first-degree theft conviction be reduced to second-degree theft when evidence of value, needed to prove first-degree theft, was insufficient); *Boone v. United States,* 296 A.2d 449, 450 (D.C.1972) (reversing grand larceny conviction and directing that conviction of petit larceny be entered); *see also Austin v. United States,* 127 U.S.App.D.C. 180, 191–192, 382 F.2d 129, 140–141 (1967) (appellate court's "power to modify erroneous judgments authorizes reduction to a lesser offense where the evidence is insufficient to support an element of the offense stated in the verdict"). Thus the only remaining question is whether ADW is a lesser included offense of aggravated assault while armed. We hold that it is.

■■■■ "A crime can only be a lesser-included offense of another if its required proof contains some, but not all, of the elements of the greater offense." *Wynn v. United States,* 538 A.2d 1139, 1145, (D.C. 1988) (citations omitted); *see Rutledge,* 517 U.S. at 300. The elements of ADW are: (1) an attempt, with force or violence, to injure another person, or a menacing threat, which may or may not be accompanied by a specific intent to injure; (2) the apparent present ability to injure the victim; (3) a general intent to commit the act or acts which constitute the assault, and (4) the use of a dangerous weapon in committing the assault. *Williamson v. United States,* 445 A.2d 975, 978–979 (D.C.1982) (citing cases). The first three are elements of simple assault; the fourth turns a simple assault into an assault with a dangerous weapon. *Id.*[8] To convict Mr. Gathy of aggravated assault while armed, the government had to show that he (1) caused serious bodily injury to Mr. Nilson, and (2) either "knowingly or purposely cause[d] serious bodily injury to [Nilson]" or "[u]nder circumstances manifesting extreme indifference to human life ... intentionally or knowingly engage[d] in conduct which create[d] a grave risk of serious bodily injury to [Nilson], and thereby cause[d] serious bodily injury," (3) while armed with a dangerous weapon. *Nixon,* 730 A.2d at 149 (citing D.C.Code §§ 22–504.1 and 22–3202).

After comparing the elements of these two crimes, we readily conclude that ADW is a lesser included offense of aggravated assault while armed. Under both statutes, the government must prove that an assault occurred, *i.e.,* an act by the defendant to injure or threaten another, the apparent present ability to injure, and the general intent to commit the act, and that the assault was committed with a dangerous weapon. The only element distinguishing the greater offense (aggravated assault while armed) from the lesser (ADW) is the requirement of a serious bodily injury;

---

8. Whether a particular object is a dangerous weapon is generally a question for the jury. *Williamson,* 445 A.2d at 979; *see Arthur v.*

*United States,* 602 A.2d 174, 177–178 (D.C. 1992).

without such an injury, the assault is not "aggravated."

■ In this case there was never any dispute that Mr. Gathy used the beer bottle to commit the assault—he conceded as much—and no other evidence was presented upon which the jury could have rested its finding that Gathy committed the assault "while armed."[9] There was absolutely no indication, nor does Gathy assert that there was, that he had a gun, knife, or other instrument which might have been the basis for the jury's finding. We are therefore satisfied that, insofar as Mr. Gathy was found guilty of the lesser offense rather than the greater, the record reveals no reversible error.

## V

We therefore reverse appellant's conviction of aggravated assault while armed and remand the case for further proceedings. On remand, if the government so requests, the court shall enter a judgment of conviction against Mr. Gathy on the lesser included offense of assault with a dangerous weapon. If the government elects not to request such a conviction, it may retry Mr. Gathy on the original charge of aggravated assault while armed.

*Reversed and remanded.*

9. We find no merit in Mr. Gathy's argument that the definition of "serious bodily injury" which we adopted in *Nixon* for purposes of the aggravated assault statute must be applied to the jury finding that the beer bottle was an "object that is likely to produce death or great bodily injury by the use made of it" to satisfy the "while armed" element of D.C.Code § 22–3202. Our decision in *Nixon* to adopt a specific definition of "serious bodily injury" for purposes of aggravated assault has no effect on the long-established rule that the determination of whether something is a dangerous weapon is ordinarily left to the jury. See note 8, *supra.* On the facts of this case, it is essentially undisputed that the beer bottle was a dangerous weapon.