Steven ANDERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 01–CF–1432.

District of Columbia Court of Appeals.

Argued March 25, 2004.

Decided Aug. 19, 2004.

Eugene K. Ohm, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Bernard J. Delia, Assistant United States Attorney, for appellee. Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Barbara J. Valliere, Toni Florence, and Patricia McBride, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB, Associate Judge, STEADMAN, Associate Judge, Retired,* and BELSON, Senior Judge.

STEADMAN, Associate Judge, Retired:

Appellant, Steven Anderson, was convicted of a number of assault counts following an altercation that occurred between appellant and his ex-girlfriend, Tameika Butler.[1] Appellant challenges his convictions on the grounds that the trial court erred in permitting (1) government cross-examination of the appellant regarding a prior bad act by the appellant, (2) reference to that act in closing arguments, (3) government cross-examination of a police officer regarding the statements of a person at the scene, and (4) admission of a 911 tape. Appellant also contends that the government failed to present sufficient evidence to warrant a finding that Ms. Butler suffered serious bodily injury, a prerequisite for aggravated assault. We affirm.

## I. Facts

On the day in question, appellant, with his step-grandfather, Leonard Kelley, picked up Ms. Butler's three-year-old son, Doné. After placing Doné in Mr. Kelley's car, Ms. Butler and a friend walked from her home through an alley to a store on Minnesota Avenue. Before she reached the store, appellant approached Ms. Butler. Appellant and Ms. Butler differed as to the events that followed.

---

* Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on August 8, 2004.

1. Specifically, appellant was convicted of two counts of aggravated assault, in violation of D.C.Code § 22–504.1 (1981) (recodified at D.C.Code § 22–404.01 (2001)) and two counts of simple assault, in violation of D.C.Code § 22–504 (1981) (recodified at D.C.Code § 22–404 (2001)). No merger arguments are made on appeal.

Ms. Butler testified that appellant yanked her hair and told her he was going to kill her. Appellant then guided her into an alley. Once in the alley, appellant punched Ms. Butler several times in the face. Attempting to defend herself, Ms. Butler retrieved a knife from her waist pouch. Appellant knocked Ms. Butler to the ground, and she tried to cut his leg with the knife. Appellant grabbed the knife from Ms. Butler. He began stomping on her face with his feet while she lay on the ground, struggling to cover her face. Appellant then stabbed Ms. Butler on the left side of her body. Ms. Butler testified she could not recall what occurred after that until the ambulance arrived.

Appellant testified that upon encountering Ms. Butler on Minnesota Avenue, she inquired when he would bring Doné home. After appellant stated that he would bring Doné back the next day, Ms. Butler indicated she should get Doné some clothes and the two began walking back to her home. While en route, Ms. Butler told appellant not to take Doné around other women. Appellant testified that he grabbed Ms. Butler to calm her. Once in the alley, appellant claimed that Ms. Butler punched him in the face so he slapped her in response. Appellant testified that the two shoved each other until Ms. Butler produced a knife. To protect himself, appellant grabbed Ms. Butler's arm, twisted her arm behind her, and knocked her to the ground. Upon falling, Ms. Butler hit her face against a fence. Ms. Butler grabbed appellant's shirt and ripped it off him. Appellant fell on Ms. Butler and she grabbed onto appellant's legs. Appellant stomped his feet to free himself and ran out of the alley. Appellant contended at trial that Ms. Butler must have fallen on her knife during the altercation.

Ms. Jeanette Brown testified that she had been driving down Minnesota Avenue and saw the appellant and Ms. Butler before they entered the alley. While stopped at a red light, Ms. Brown saw appellant slap Ms. Butler. She told the appellant not to "do that," to which appellant responded, "fuck you, mind your business." As appellant pushed Ms. Butler toward the alley, Ms. Brown called the police.

Mr. Kelley, the appellant's step-grandfather, testified that appellant emerged from the alley in a "worked up" state. Appellant admitted that he had beaten Ms. Butler and asked Mr. Kelley to drive him to a friend's house. About two months later, a deputy on the fugitive apprehension warrant squad of the U.S. Marshals Service apprehended appellant at his step-grandfather's house in Prince George's County, Maryland.

## II. *Drew* Evidence

Prior to trial, before Judge Rankin, the government sought court approval to use three incidents of prior bad acts evidence at trial. Only the third incident is at issue. The government sought to show that in the summer of 2000, several months prior to the indicted altercation, Ms. Butler arrived home in a vehicle with another man. Appellant, in a fit of jealously, stabbed the man, smashed the windows of the car, and attempted to attack another passenger. Finding the incident to be relevant to rebutting appellant's claim of self-defense, both Judge Rankin and Judge Bush ruled pretrial that evidence of the incident could be admitted.[2] No evidence of the incident was introduced in the government's case in

2. Originally, the case was before Judge Rankin, but before trial commenced the case was transferred to Judge Bush. Judge Rankin initially addressed the proposed *Drew* evidence, and the issue was reevaluated before Judge Bush.

chief; however, the government did cross-examine appellant regarding the incident, to which appellant made no objection.[3] On appeal, appellant contests the adequacy of the government's pretrial proffer regarding its *Drew* evidence, asserting that the government failed to establish the crime by clear and convincing evidence. Appellant also challenges the government's cross-examination of the appellant regarding the incident and the government's reference to the incident in its closing remarks.

### A. *The Proffer*

 While "evidence of a crime for which the accused is not on trial is 'inadmissible to prove disposition to commit crime, from which the jury may infer that the defendant committed the crime charged,' [o]ther crimes evidence is admissible... when it is 'relevant and important' to the issue of intent (among other is-

sues)." *Riley v. United States*, 790 A.2d 538, 539–540 (D.C.2002) (citing *Drew v. United States*, 118 U.S.App. D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964)) (other citation, footnote, and emphasis omitted). To warrant admission of *Drew* evidence, "our cases have held that the defendant's commission of the other crime must be established preliminarily by clear and convincing evidence." *Id.* at 540 n. 2 (citation omitted).

 A trial court's admission of *Drew* evidence based upon a proffer is reviewed for abuse of discretion. "In *Daniels v. United States*, we held that a 'trial court may act within its discretion to conduct its pretrial inquiry on the admissibility of the other crimes evidence by means of a 'detailed proffer from the government' instead of holding, in effect, a bench trial of the other crime, which presumably will be fully replicated before the jury if admitted.' " *Crutchfield v. United States*, 779

---

3. The cross-examination of appellant occurred as follows:

Q: Let's go back to the summer, early fall, year 2000. Tameika was out late one night and you were out looking for her, do you remember that?
A: I don't recall that...
Q: And you actually went in the kitchen and got two knives, do you remember that?
A: I don't remember that either.
Q: You had one knife in your pocket and you had one knife in your jacket?
A: I don't remember that.
Q: Do you remember you waited outside Tameika's door until she came home?
A: No.
Q: Do you remember that when she drove up to the house she was in the car with two men?
A: I don't recall that.
Q: And earlier you had been ranting and raving that you knew Tameika was out with men, do you remember that?
A: I don't recall that either...
Q: is that correct? When she drove up in the car she was sitting in the front passenger seat and there was another man sitting in the driver's seat, do you remember that?

A: I don't recall that either.
Q: There was a third man sitting in the back seat, do you remember that?
A: No.
Q: Well, let me ask you this, do you remember pulling down a ski cap and approaching the car with a knife?
A: No, I don't remember.
Q: Do you remember stabbing the person sitting in the driver's seat of the car?
A: No, I don't.
Q: ... do you remember going around to the other side of the car and smashing in the back window?
A: No, I don't remember.
Q: You don't remember any of that?
A: I don't remember none of that...
Q: And then you and Tameika got into another fight over that, do you remember that?
A: No, I don't recall that.
Q: And do you remember Tamekia say[ing] to you, Bean, that didn't make sense at all. That was Doné's father in the back seat. Do you remember that?
A: No.

A.2d 307, 330 (D.C.2001) (quoting *Daniels v. United States,* 613 A.2d 342, 347 (D.C. 1992)). "In its proffer, the government must show the trial court that the evidence that it proposes to present during the trial would, *if believed,* clearly and convincingly establish that the uncharged crime occurred and the defendants were connected to it." [4] *Daniels, supra,* 613 A.2d at 347 (emphasis added) (footnote omitted).

In this case, the government made several proffers regarding the incident: in writing, before Judge Rankin, and before Judge Bush. In its filed "Notice of Intent to Introduce Other Crimes Evidence," the government proffered, "[i]n or about late Summer or early Fall, 2000, the defendant stabbed a young man in the vicinity of 1209 30th Street, S.E., after the young man drove up in the car in which Ms. Butler was riding. The defendant also smashed some of the windows of the vehicle in an attempt to attack another passenger. Prior to the stabbing and destruction of property, the defendant indicated that he was angry at the young man because defendant thought the young man was romantically involved with Ms. Butler."

Before Judge Rankin, the government averred that in the summer or early fall of 2000, "the victim [Ms. Butler] was in the car, as were two other men. The defendant believed that the victim was romantically involved with one of the men. The victim saw the defendant go after that man, beat him, and also smashed some of the windows in the car."

Before Judge Bush, the government stated, "With regard to the summer incident she [the prosecutor before Judge Rankin] proffered to the Court that there was an eyewitness that saw that incident." Moreover, defense counsel acknowledged to Judge Bush that "[t]he summer of 2000 incident ... is an allegation that Mr. Anderson stabbed somebody because he was jealous of the person who was with the complaining witness. The government proffered that they have testimony of the complaining witness [Ms. Butler] as to that and testimony of another witness who's a relative-a live-in relative of the complain-

---

4. Of course, " '[a] proffer is not evidence at all,' which makes the trial judge's task of determining whether proposed testimony of another crime constitutes 'clear and convincing' evidence a difficult one." *Parker v. United States,* 751 A.2d 943, 949 (D.C.2000) (quoting *Daniels, supra,* 613 A.2d at 349 (Schwelb, J. concurring)). Such difficulty, in conjunction with the requirement that all evidence, including other crimes evidence, is subject to the strictures of Federal Rule of Evidence 403, whereby even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," lends support to the contention that this court should adopt the position of the Supreme Court with regard to other crimes evidence. *See Daniels, supra,* 613 A.2d at 349 (Schwelb, J., concurring); *Johnson v. United States,* 683 A.2d 1087, 1107 (D.C.1996) (en banc) (King, J., concurring) (noting the tenuous origin of the clear and convincing standard, "having evolved from dictum in a twenty-six-year-old case decided by the United States Court of Appeals for District of Columbia, a court that no longer applies that standard itself because it is bound by *Huddleston* "), *cert. denied,* 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997). In *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court unanimously held the trial court need not preliminarily find that the government has established the "other crimes" by a preponderance of evidence. Instead, the Court determined that other crimes evidence is admissible "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act," and subject to the probative versus prejudicial balancing of Rule 403. Nonetheless, the repeated endorsement of the clear and convincing standard by this court would prevent this panel from considering an alternate standard for admission. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971); *Groves v. United States,* 564 A.2d 372, 374–75, n. 5 (D.C.1989), modified *per curiam,* 574 A.2d 265 (D.C.1990).

ing witness." Later the government reiterated that, "the government's proffer was that we had Ms. Butler and an eyewitness to this ..." Appellant challenged the admission on the basis of the proffer contending, "but for those two individuals there's no corroboration in the sense that no 911 call was made, the police were never contacted, the alleged victim of that assault isn't-you know, the government doesn't have that person." Judge Bush ruled, "The court finds that the complaining witness's testimony-I mean, the Government's-the jurors *will hear* from the complaining witness on the instant offenses as well as the prior incident-prior incidents and that's the core of proof here and so the court finds that that *would be* clear and convincing." (Emphasis added).[5]

■ The trial court did not abuse its discretion in admitting the other crime evidence based upon the fulfillment of the government's proffers. The government furnished both the general time and the specific location of the incident. Specific details of the incident were asserted to the trial court: that the defendant was upset because he believed Ms. Butler was involved with another man in the car, he broke the windows of the car, and he stabbed the person with whom he believed Ms. Butler was involved. Finally, the government indicated that both Ms. Butler and another eyewitness would testify to the events. This information "*if believed,* [would] clearly and convincingly establish that the uncharged crime occurred and the defendant[][was] connected to it." *Daniels,* 613 A.2d at 344–47 (emphasis added)

(government proffered that an eyewitness would testify as to the specifics of a drug association and the reason for the murder in question, while other witnesses would corroborate that account); *cf. Bolanos v. United States,* 718 A.2d 532, 535, 539, 545 n. 8 (D.C.1998) (Reid, J., concurring with alternative holding and Ruiz, J., concurring) (government's proffer that the victim and another unnamed eyewitness would testify regarding a prior beating of the victim by the defendant was sufficient).

■ Given the detail of the proffer here, the trial court did not abuse its discretion in finding that, if presented and believed, the government's proffered evidence would be clear and convincing.[6]

### B. *Cross–Examination*

■ To the extent that appellant contends that the cross-examination was impermissible because the government failed to fulfill its proffer and demonstrate the commission of the crime by clear and convincing evidence, we review for plain error. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) ("errors not objected to at trial are unreachable on review unless they fall within the purview of the plain error rule"). Appellant argues that the pretrial motion in limine and discourse regarding the admission of the *Drew* evidence preserved any challenge to the cross-examination regarding that evidence for appeal. *See Wilkins v. United States,* 582 A.2d 939, 942 n. 7 (D.C.1990). The continuing objection doctrine only applies where the trial court "has already had an

5. Appellant argues that the trial court's ruling was not contingent upon proof at trial of the incident, but we read the ruling otherwise.

6. If a party fails to present the proffered evidence or such evidence is deficient, opposing counsel can request, and the trial court would be obliged to provide, a "remedy according to the severity of the failure of proof. The trial

court, in its discretion, may, for example, restrict the government's closing argument, give limiting instructions to the jury, or, where it deems there is a probability of a miscarriage of justice, declare a mistrial." *Daniels, supra,* 613 A.2d at 347 (citation omitted).

opportunity to decide the point at issue" while "the purpose of the contemporaneous objection rule is to give the trial court an opportunity to correct any potential errors at the time they are made." *McGrier v. United States*, 597 A.2d 36, 45 n. 14 (D.C.1991) (appellant's objection that the government lacked a good faith basis for asking a question on cross-examination did not preserve for appeal appellant's challenge to the government's discussion of such questioning in its closing argument) (citations omitted). Here, appellant's pretrial objection argued that the government had not demonstrated the existence of the other crime by clear and convincing evidence. After the trial court permissibly ruled that the government's proffer, once fulfilled, "would be clear and convincing," appellant was required to alert the court if such proffer, in fact, had not been satisfied in order to request that the trial court prohibit the government from questioning the appellant regarding the other crime. Where a trial court permits the admission of evidence subject to the fulfillment of a condition, an opposing party must object if it believes that condition has not been fulfilled when the disputed evidence is presented. *See, e.g., United States v. Archdale*, 229 F.3d 861, 864 (9th Cir.2000) ("Absent a thorough examination of the objection raised in the motion in limine and an explicit and *definitive* ruling by the district court that the evidence is admissible, a party does not preserve the issue of admissibility for appeal absent a contemporaneous objection") (emphasis added); *Wilson v. Williams*, 182 F.3d 562, 565–66 (7th Cir.1999) ("conditional rulings require further action at trial . . . for example, the judge says that certain evidence will be admitted unless it would be unduly prejudicial given the way the trial develops—then later events may lead to reconsideration, and the litigant adversely affected by the ruling must raise the subject later so that the judge may decide whether intervening events affect the ruling. An appeal in such a case without an objection at trial would bushwhack both the judge and the opponent") (citations omitted); *United States v. Graves*, 5 F.3d 1546, 1551 (5th Cir.1993) (and cases cited therein), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1994); *cf. McGrier, supra*, 597 A.2d at 45 n. 14.

■ In order to establish the existence of plain error, appellant must show that the allowance of the cross-examination constituted error that was "(1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Johnson v. United States*, 840 A.2d 1277, 1280 (D.C.2004) (citations omitted); *Clayborne v. United States*, 751 A.2d 956, 966 (D.C. 2000) (citations omitted). "Plain error is found only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *Bates v. United States*, 834 A.2d 85, 92 (D.C.2003).

■ The error, if any, was not obvious. To begin with, it is far from clear why it should be obvious to the trial judge that the government had not produced substantive evidence in accordance with its proffer when that fact did not occur to defense counsel. Moreover, in general, the cross-examination of a witness regarding a crime that has not resulted in a conviction is permissible upon a showing (1) of a factual basis for the question and (2) that the crime "bears directly upon the veracity of the witness in respect to the issues involved in the trial." *Murphy v. Bonanno*, 663 A.2d 505, 509 (D.C.1995) (citation omitted); *Sherer v. United*

*States*, 470 A.2d 732, 738 (D.C.1983), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). We have said that the "impeachment rules should not be confused with the analytically distinct doctrine that restricts the introduction, *as substantive evidence*, of an accused's prior crimes or bad acts [under] ... *Drew.*" *Sherer, supra*, 470 A.2d at 738 n. 5 (emphasis added). Our cases have not made clear whether the standard elicited under *Sherer* or the standard under *Drew* should apply to questioning of the defendant himself or herself regarding other crimes. *Compare Portillo v. United States*, 609 A.2d 687, 690–91 (D.C.1992) (holding that the cross-examination of the defendant was improper where the questioning did not fulfill the strictures of *Sherer*), *and Jamison v. United States*, 600 A.2d 65, 68–69 (D.C.1991), *with Galindo v. United States*, 630 A.2d 202, 207 (D.C.1993) (stating *Sherer* applies to cross-examination of a "non-defendant witness"). Nor have our cases elucidated whether such questioning, in light of appellant's claim of self-defense, would be considered substantive evidence or impeachment.[7] *See, e.g., Wesley v. United States*, 547 A.2d 1022, 1025 (D.C.1988) ("when a defendant testifies to certain facts or issues during his direct examination, he 'opens the door' to further inquiry into those matters on cross-examination. The extent and scope of that cross-examination are subject to the broad discretion of the trial judge.") *and Howard v. United States*, 663 A.2d 524, 528 n. 6 (D.C. 1995) (noting the *Drew* exception for intent applies when the defendant's state of mind is at issue, including a claim of self-defense, but addressing extrinsic evidence not cross-examination of the defendant). Thus, any error in the allowance of the cross-examination could not be deemed "clear under current law."[8] *Johnson, supra*, 840 A.2d at 1280.

## C. *Closing Argument*

Appellant further argues that the trial court improperly permitted the gov-

---

7. Questions, of course, are not evidence, and the jury was so instructed. *See Price v. United States*, 697 A.2d 808, 818 n. 2 (D.C.1997) (Schwelb, J., concurring). Nonetheless, the government may not " 'manufacture evidence by creating an impression in the minds of the jurors through questions that imply the existence of facts,' unless the factual predicate for the question is 'grounded in a good faith belief that those facts are susceptible to proof by competent evidence.' " *Pluimmer v. United States*, 813 A.2d 182, 190 (D.C.2002) (citations omitted). On the other hand, responses to questions are substantive evidence. Here, the appellant brought harm upon himself by not addressing directly detailed accusations that, if false, he would be expected to deny outright. *See* 3A WIGMORE, EVIDENCE § 995(1), at 931 (Chadbourn rev.1970) ("the testing of a witness' capacity of recollection by cross-examination upon other circumstances, even unconnected with the case in hand, is a recognized and common method of measuring the weight of his testimony") (emphasis omitted).

8. Even assuming such error was "plain," we cannot say that it was so prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. No extrinsic evidence was introduced by the government regarding the other stabbing incident. While the government did question the appellant about the occurrence, the questions themselves were not evidence and the jury was so instructed. *See Price, supra* note 7, 697 A.2d at 818 n. 2 (Schwelb, J., concurring); *cf. Johnson, supra*, 840 A.2d at 1280 (the "jury is presumed to follow the trial court's instructions"). The government emphasized this to the jury in its own closing arguments stating, "you cannot come to conclusions based on the questions that I asked the defendant." Moreover, the court instructed the jury that it could not consider other crimes evidence "to find that [the defendant] has a bad character or that he has a criminal personality because the law doesn't allow you to convict a person simply because he may have done bad things in the past."

ernment, over appellant's objection, to refer to the other stabbing incident in its closing argument because there was no evidence on the record that such an event occurred. We review for abuse of discretion and find none. *See Gordon v. United States,* 783 A.2d 575, 589 (D.C.2001). At least where the appellant's testimony was already before the jury without objection, the trial court did not abuse its discretion in permitting the closing argument on the grounds that appellant's answers that he "did not recall" the other stabbing were relevant to his credibility. "As the trier of fact, the jury was entitled to disbelieve [a defendant's] testimony... And if the jury did disbelieve [him], it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt." *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); *cf. Earle v. United States,* 612 A.2d 1258, 1268–69 (D.C.1992). Here, where the appellant answered that he did not recall stabbing someone rather than stating that he did not commit the stabbing, the jury was permitted to find such answers incredible and apply its credibility determination to the appellant's claim of self-defense. *See* WIGMORE, *supra* note 7. The trial court, thus, did not abuse its discretion in allowing the government to refer to the testimony regarding that incident in closing for the purpose of attacking the appellant's credibility.[9]

## III. Questioning of Police Officer

■ Appellant contends that the trial court erred in permitting the government to question a police officer to determine whether certain statements were made by Ms. Jeanette Brown, a testifying witness, or someone else. During the cross-examination of Ms. Brown, defense counsel asked her whether she had initially told police that she witnessed the appellant punch, kick and stab Ms. Butler. Ms. Brown denied so telling police, answering, "I was not the person that told the police that." Defense counsel then sought to impeach Ms. Brown's testimony as to what she said she had witnessed by calling Officer Latania Nicholson. Officer Nicholson stated that Ms. Brown had told police that "she observed Steven Anderson kick and hit the complainant, the victim, and also stab her in the back." After Officer Nicholson testified that she also interviewed a woman named Ms. Wood about the incident, the government requested a side bar during which it stated: "It's the government's position that she [Officer Nicholson] is confusing these two witnesses. And I would like to be able to ask her what the person said." Appellant objected to such questioning on the ground that "this witness hearsay statement of Ms. Wood is going to come in ... [and] is very prejudicial." The government responded that "defense counsel brought this up. What I'm trying to do is not for the truth of the matter asserted..." The court permitted limited questioning as to "whether the report states that Ms. Brown claims that she observed what happened in the alley or if Ms. Brown agreed with another witness as a rendition of what happened in the alley." The appellant again objected on hearsay, prejudice and confrontation grounds, which were denied.[10]

9. Furthermore, any potential prejudice to the appellant was assuaged by (1) the trial court's instruction to the jury that the government's questions were not evidence; (2) the government's own closing argument, advising the jury that it could not make conclusions based on the prosecutor's questions but could evalu-

ate the appellant's answers; and (3) the trial court's instruction to the jury that it could not convict the appellant for any bad acts he had committed in the past.

10. The government continued the cross-examination of Officer Nicholson:

■ The trial court did not abuse its discretion in permitting the questioning of Officer Nicholson regarding Ms. Brown's adoption of another witness's account because the testimony was not hearsay.[11] "If a statement is not offered to prove the truth of the matter asserted, it is not hearsay... and [its] admission [is] not an abuse of discretion on the part of the trial court." *Burgess v. United States*, 786 A.2d 561, 570 (D.C.2001) (citation and footnote omitted). The officer's testimony that "Ms. Wood said that" was not offered for the truth of what Ms. Wood said—that she saw the appellant stab the victim—but to show that Ms. Brown did not make such statements. *See, e.g., Taylor v. United States*, 603 A.2d 451, 461 (D.C.) (holding that accusation that someone was a 'snitch' was not hearsay because it was not offered for its truth, but to show that the accusation was in fact made), *cert. denied sub nom., Jones v. United States*, 506 U.S. 852, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992);

Q: And when you testified on direct examination about what Ms. Brown said did you have an independent recollection of that or did you use a document to refresh your memory?
A: I read over all the notes that he gave me today...
Q: Okay. Does it say on there that Ms. Brown actually said that the defendant-that she observed the defendant punch and kick the victim in the face and body before producing a knife and stabbing in the back.
A: Yeah, that's what the note said.
Q: The note said that she actually used those words?
A: That I read over today, that she observed the complainant kicked and punched in the back and then stabbed-kicked and punched in the face and stabbed in the back.
Q: Isn't it true, officer, that this report, the only thing that it says is that the witness stated the same occurrence of events took place, that's the only thing mention in this entire report.
A: Yes. Yes. Ms. Wood–Ms. Wood said that and Ms. Brown-

*Peyton v. United States*, 709 A.2d 65, 74 n. 21 (D.C.) (grand jury testimony was not hearsay because, it was not offered to prove the truth of the matter asserted, but to establish that an exculpatory lie was told to the grand jury, under oath), *cert. denied*, 525 U.S. 854, 119 S.Ct. 134, 142 L.Ed.2d 108 (1998). The trial court did not abuse its discretion in permitting the testimony as non-hearsay.[12] Moreover, the trial court did not abuse its discretion in finding that the line of questioning was not more prejudicial than probative—the questioning was to rehabilitate the government's witness, the other witness, Miss Wood, was barely mentioned, the government cut off any additional testimony regarding the other witness, and the government did not refer to the other witness in its subsequent arguments.

## IV. 911 Tape

■ Appellant alleges the trial court abused its discretion in admitting, over

Q: You can stop there. Is it your testimony now that the only thing in this report, George Thomas' report, that is from Ms. Brown is merely that she stated the same occurrence of events took place?
A: That's true.
Q: Okay. So, in fact, Ms. Brown never said that the defendant—she saw the defendant punch and kick the victim, is that correct?
A: That's correct...

11. The trial court did not give, nor at any point did appellant request, a limiting instruction.

12. Appellant's claim that the testimony violated the Confrontation Clause also fails because the statement was not hearsay. In the Supreme Court's recent clarification of the requirements of the Confrontation Clause, the Court noted that "[t]he Clause also does not bar the use of testimonial statements *for purposes other than establishing the truth of the matter asserted.*" *Crawford v. Washington*, 541 U.S. 36, —— n. 9, 124 S.Ct. 1354, 1369 n. 9, 158 L.Ed.2d 177 (2004) (emphasis added) (citing *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)).

objection, a portion of a 911 call in which the caller, Ms. Brown, stated "a man is beating a woman in the alley" because the declarant, who was not in the alley, lacked personal knowledge of the statement. "Just as testifying witnesses must have personal knowledge of the subject of their testimony, hearsay declarants must have personal knowledge of what they assert in order for their declarations to be admissible." *Ginyard v. United States*, 816 A.2d 21, 40 (D.C.2003) (citing *Smith v. United States*, 583 A.2d 975, 983–84 (D.C.1990)).

Assuming, without deciding, that the admission of the contested portion of the 911 tape was an abuse of discretion, the error was nonetheless harmless under *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Appellant knew in advance of the discrepancy between the statement on the tape that a man was beating a woman in an alley and Ms. Brown's grand jury testimony that she did not see what occurred in the alley. Furthermore, Ms. Brown testified at trial. She was not only available for cross-examination, but was, in fact, fully cross-examined on the issue. Ms. Brown admitted, contrary to her statement on the tape, "I did not see him beat her up. That was my assumption, that was my fear for her that she was going to be beaten." On cross-examination, the declarant admitted the error in her taped statement. Appellant admitted, at least in part, to the conduct referred to on the tape by stating that he slapped Ms. Butler in the alley; and Ms. Butler, the victim, testified as to what happened in the alley. We can say with fair assurance that any error by the trial court, therefore, did not substantially sway the judgment. *See Smith v. United*

*States*, 666 A.2d 1216, 1225–1226 (D.C. 1995) (where "[t]he fact that the complainant/declarant misrepresented a fact to the police during the 911 call was relevant to a determination of whether it was a spontaneous utterance" but was harmless because "the witness whose spontaneous utterance was at issue was available at trial and fully cross-examined by defense counsel, [a]ppellant obtained information" of the discrepancy "in time to seek corrective measures in the trial court and to use it to impeach the witness during cross-examination" such that "the jury had an opportunity to consider the complainant's admitted fabrication in assessing his credibility") (footnote omitted).

## V. Sufficiency of the Evidence for Serious Bodily Injury

Finally, appellant claims that the evidence was insufficient to demonstrate beyond a reasonable doubt that Ms. Butler had suffered serious bodily injury consistent with the requirements of the aggravated assault statute.[13] On a claim of insufficient evidence, we view the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the government and deferring to the jury's province to determine credibility and weigh evidence. *Owens v. United States*, 688 A.2d 399, 402–403 (D.C.1996). "It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Zanders v. United States*, 678 A.2d 556, 563 (D.C.1996) (citations omitted).

---

13. Under D.C.Code § 22–504.1: "(a) A person commits the offense of aggravated assault if: (1) By any means, that person knowingly or purposely causes serious bodily injury to another person; or (2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury."

For aggravated assault, "[s]erious bodily injury means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Gathy v. United States,* 754 A.2d 912, 915 n. 3 (D.C.2000) (quoting D.C.Code § 22–4101(7) (1996)). A jury may infer from a description of the nature and extent of injuries that an individual has suffered "serious bodily injury" as defined. *Gathy,* 754 A.2d at 918–19. In *Gathy,* this court found that the government presented sufficient evidence from which a reasonable jury could find, beyond a reasonable doubt, that the victim had suffered serious bodily injuries involving: I) a substantial risk of unconsciousness because the victim testified to being " 'semi-unconscious,' 'in total shock,' and '[not] totally coherent' " and ii) extreme physical pain because although "he never described [his pain] in terms that would indicate it was 'extreme' . . . a reasonable juror could infer from the nature of his injuries, and from his reaction to them, that the pain was extreme." *Id.; compare with Nixon v. United States,* 730 A.2d 145, 150–51 (D.C.) (holding the government did not provide sufficient evidence to support convictions for aggravated assault "due to the absence of testimony from [the victims], or from health professionals who treated them, or medical records detailing the nature and extent of their injuries"), *cert. denied,* 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999).

The evidence presented regarding the stabbing included Ms. Butler's testimony that she felt the knife, that "It was burning. It was *very painful.*" Her physician, Dr. Norma Smalls, testified that Ms. Butler was in pain when she came to the hospital, characterizing that pain as "significant." Ms. Butler was taken immediately to surgery because "the knife had gone through [her] kidney." The surgery resulted in a six to eleven inch scar on Ms. Butler's belly, and, in order to respond to complications resulting from the first surgery, Ms. Butler was required to undergo a second surgery.

As to the serious bodily injury resulting from the shod foot, Ms. Butler testified that the appellant "started jumping on my face with both his feet so I'm trying to cover up my face." Dr. Norma Smalls testified that Ms. Butler's "nose was broken and the sinus . . . below the left eye was also broken . . . correction, right." Noting that a broken nose and sinus bone were injuries consistent with someone stomping on another's face, Dr. Smalls opined that each injury sustained to Ms. Butler's face, the swollen forehead, the broken nose, and the broken sinus bone, would cause pain as "broken bones are painful." Dr. Smalls also indicated the potential long term effects of such injuries include "sinus infections and sinusitis . . . those can be very painful, kind of debilitating . . ." Finally, Ms. Butler was prescribed pain medication "[b]ecause of the broken bones and she'd recently had surgery and the face injury."

Construing the facts in the light most favorable to the government, the government presented sufficient evidence for the jury to conclude that Ms. Butler suffered serious bodily injury from stabbing in her side and the stomping on her face. Although Ms. Butler "never described [her pain] . . . [as] 'extreme' . . . a reasonable juror could infer from the nature of [her] injuries, and from [her] reaction to them, that the pain was extreme." *See Gathy,* 754 A.2d at 918. Ms. Butler testified the stabbing was very painful and her doctor indicated such an injury would cause significant pain. The stabbing resulted in

surgery and the provision of pain medication. Her doctor testified that each of her facial injuries, including broken bones, would be painful and that medicine was prescribed to alleviate such pain. Therefore, the jury could conclude beyond a reasonable doubt that Ms. Butler suffered extreme pain from both the stabbing assault and the shod foot assault.

In sum, we find no grounds for reversal in any of appellant's arguments on appeal. Accordingly, the judgment appealed from is

*Affirmed.*

SCHWELB, Associate Judge, concurring:

I concur in the judgment and join the court's opinion. Nevertheless, I continue to adhere to the views I expressed in my separate opinion in *Daniels v. United States,* 613 A.2d 342, 349–50 (D.C.1992). A proffer is a statement of counsel. A statement of counsel is not evidence. Therefore, a proffer is not and cannot be "clear and convincing evidence."

The explanation that a prosecutor's proffer as to what the evidence will show is itself clear and convincing evidence if it is credited reminds me of a dog chasing its own tail. Evidence is credited because it is "convincing"; if it is not convincing, the trier of fact will not believe it. Our current doctrine, on the other hand, supposes that a proffer is convincing (and clear too) "if believed." Maj. op. at 457 (quoting *Daniels,* 613 A.2d at 347). Apparently, as a very able colleague told me about another case soon after I joined this court, "common sense has nothing to do with it."

I was of the opinion twelve years ago, when *Daniels* was decided, that we should conform our jurisprudence to *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), and that

we should stop pretending that a proffer is clear and convincing evidence when it obviously is not. Nothing in the intervening twelve years has persuaded me that our illogical handling of this issue is superior to the straightforward approach adopted by all nine Justices in *Huddleston.*